ER

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        SUPERIOR COURT
                                                   C.A. No.:

---

VITA LAW OFFICES, P.C.,

        Plaintiff,

v.

LOCKRIDGE GRINDAL NAUEN
P.L.L.P. and HEIDI M. SILTON, ESQ.,

        Defendants.

---

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

       Plaintiff, Vita Law Offices, P.C. ("Plaintiff" or "Vita"), by and through its undersigned

counsel, brings this action for damages and other relief against Defendants Lockridge Grindal

Nauen P.L.L.P. ("LGN") and Heidi M. Silton, Esq. ("Silton") (collectively, "Defendants"). As

and for its Complaint, Plaintiff alleges as follows:


NATURE OF THE CASE


1.    This action arises from Defendants' wrongful refusal to honor a referral fee agreement

      entitling Plaintiff to 15% of the net attorneys' fees recovered in the Indirect Purchaser

      North Atlantic Farmed Salmon Antitrust Litigation (hereinafter "Salmon Antitrust

      Litigation"), Case No. 1:19-cv-22128-RS, filed in the U.S. District Court for the Southern

      District of Florida. Plaintiff, as the originating attorney, referred two critical plaintiffs—

      Wood Mountain Fish LLC ("Wood Mountain") and Stephen T. DeAngelis Inc. d/b/a

Golden Goose Markets ("Golden Goose")—to the litigation, enabling Defendants to secure a co-lead counsel role and ultimately recover approximately $4.4 million in attorneys' fees from a settlement finalized on February 27, 2023.

2. Plaintiff is a professional corporation based in Massachusetts with a proven track record of identifying and referring viable plaintiffs for complex litigation, as demonstrated by prior successful referrals upheld by Massachusetts courts (e.g., Vita v. Berman, DeValerio & Pease, LLP, 81 Mass. App. Ct. 748 (2012)). In this instance, Plaintiff's expertise and efforts, through its principal, Richard J. Vita, Esq., directly contributed to the success of the Salmon Antitrust Litigation, a landmark case addressing anticompetitive practices in the North Atlantic farmed salmon industry.

3. Defendant LGN, a professional limited liability partnership (PLLP) based in Minnesota, sought to join as co-counsel on the plaintiff's first-filed complaint in the Salmon Antitrust Litigation in 2019, as LGN had no client of its own in the case. Upon seeing LGN listed as co-counsel in a draft complaint, Richard J. Vita, Esq., principal of Plaintiff, called Fred T. Isquith Sr. ("Isquith") of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), the first court-appointed interim-lead counsel, to inquire whether LGN had its own client. Isquith confirmed LGN did *not*. In exchange for Plaintiff's referral of Wood Mountain and, later, Golden Goose, Defendants, through Isquith's express communications, agreed to pay Plaintiff a 15% referral fee on the net attorneys' fees recovered. This agreement was a condition precedent for Plaintiff's consent to LGN's inclusion as co-counsel.

4. Relying on Defendants' assurances, Plaintiff provided invaluable services, including identifying and securing Wood Mountain and Golden Goose as plaintiffs, which

2

addressed critical standing and jurisdictional concerns raised by defense counsel and

ensured the litigation's viability. These efforts culminated in LGN's appointment as

interim co-lead counsel on February 24, 2020.

5.  Despite reaping enormous financial benefits from Plaintiff's contributions, Defendants

have repudiated their agreement, falsely denying its existence and engaging in a pattern

of unfair and deceptive conduct to avoid payment. Beginning with a coercive fee

allocation proposal on April 5, 2023, Defendants have withheld Plaintiff's rightful share,

misrepresenting facts and leveraging their control over fee disbursements to pressure

Plaintiff into relinquishing its claims. This conduct not only breaches the parties' contract

but also violates well-established principles of equity and Massachusetts law, including

the Consumer Protection Act, M.G.L. c. 93A.

JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action as a court of general

jurisdiction under M.G.L. c. 212, § 3, as the amount in controversy exceeds $50,000, and

the claims arise under Massachusetts law.

7.  Personal jurisdiction over Defendants is proper under the Massachusetts Long-Arm

Statute, M.G.L. c. 223A, § 3(a), (c), and (d), and constitutional due process standards.

Defendants transacted business in Massachusetts by entering into the referral fee

agreement with Plaintiff, a Massachusetts professional corporation, represented

Massachusetts-based entities (i.e., the Salmon Antitrust Litigation clients), and caused

tortious injury in this Commonwealth through their breach and deceptive practices.

Defendants also derive substantial revenue from services connected to Massachusetts-based plaintiffs and counsel in the Salmon Antitrust Litigation.

8. Venue is proper in Suffolk County under M.G.L. c. 223, § 1, because Plaintiff's principal place of business is in Boston, Suffolk County, Massachusetts and a substantial part of the events giving rise to this claim—namely, the formation and breach of the referral agreement—occurred in Massachusetts.

9. Additionally, the referred clients, Wood Mountain Fish LLC and Stephen T. DeAngelis Inc. d/b/a Golden Goose Markets, are Massachusetts-based entities. Their participation as plaintiffs was central to the Salmon Antitrust Litigation, which involved representing indirect purchasers in Massachusetts affected by the defendants' anticompetitive conduct.

10. Plaintiff's role in the litigation included identifying and securing Massachusetts-based purchasers, and Plaintiff Vita, the referring attorney, conducted all relevant activities from its Massachusetts office. These substantial connections to Massachusetts make Suffolk Superior Court the appropriate forum for adjudicating this dispute.

11. Furthermore, Defendants' unfair and deceptive practices give rise to a separate and distinct cause of action under M.G.L. c. 93A, § 11, Massachusetts' Consumer Protection Act, which provides for treble damages and attorneys' fees to redress such misconduct in trade or commerce.

PARTIES

12. Plaintiff Vita Law Offices, P.C. is a professional corporation organized under the laws of Massachusetts, with its principal place of business at 100 State Street, Suite 900, Boston, MA 02109.

4

13. Defendant Lockridge Grindal Nauen P.L.L.P. ("LGN") is a professional limited liability partnership organized under the laws of Minnesota, with its principal offices at 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401.

14. Defendant Heidi M. Silton, Esq. is a natural person and a resident of Minnesota. Silton acted as LGN's representative in communications regarding the referral agreement and the Salmon Antitrust Litigation.

15. LGN is vicariously liable for the acts of Silton, as she was acting within the course and scope of her duties for LGN in connection with the events alleged herein.

## FACTUAL BACKGROUND

16. In early 2019, Richard J. Vita, Esq., principal of Plaintiff, leveraging his extensive experience in identifying plaintiffs for complex litigation, referred Wood Mountain Fish LLC, a Massachusetts-based entity, to Fred T. Isquith Sr., then managing senior partner of Wolf Haldenstein, to be the plaintiff in the first filed complaint. This referral was made pursuant to an express agreement that Plaintiff would receive 15% of the net attorneys' fees recovered from any settlement or judgment, a customary arrangement acknowledged by Isquith.

17. On May 24, 2019, the complaint in Wood Mountain Fish LLC v. Mowi ASA, et al., Case No. 1:19-cv-22128-RS, was filed in the U.S. District Court for the Southern District of Florida, naming Wood Mountain as the lead plaintiff. The case alleged antitrust violations by major salmon producers, seeking damages for indirect purchasers affected by price-fixing.

18. Prior to filing, Isquith provided Vita with a draft complaint listing LGN as co-counsel. Concerned about LGN's inclusion, Vita inquired whether LGN had its own client. Isquith confirmed that LGN did not have its own. Plaintiff consented to LGN's inclusion on the express condition that LGN agreen to and honor the existing 15% referral fee agreement. Isquith relayed this condition to Silton, LGN's representative, who accepted it, as confirmed by Isquith to Vita.

19. At some point during the Salmon Antitrust Litigation, defense counsel raised concerns to Isquith that Wood Mountain Fish LLC might be deemed a pass-through entity, potentially undermining the case's settlement prospects. In turn, Isquith reached out to Vita, stating that an additional Massachusetts retailer was needed as a plaintiff. After diligent efforts, Vita secured and referred Golden Goose Markets, another Massachusetts-based retailer. This second referral proved critical in overcoming defendants' objections and enhancing the prospects for a favorable settlement; indeed, Vita's second client was instrumental in securing a favorable settlement thereafter.

20. On February 24, 2020, LGN was appointed interim co-lead counsel alongside Isquith in the Salmon Antitrust Litigation, with Silton serving as co-lead. This appointment was directly attributable to Plaintiff's referrals, as LGN had no independent client and relied entirely on Wood Mountain and Golden Goose to establish its role.

21. The litigation progressed over several years, involving extensive discovery and motion practice, as detailed in the docket sheet (e.g., motions to compel, settlement negotiations). On September 22, 2022, the court granted a joint motion to stay proceedings pending settlement approval (Docket No. 335). On February 27, 2023, Judge Rodney Smith granted final approval of a $33 million settlement, certifying a settlement class and

awarding $9.9 million in attorneys' fees to plaintiffs' counsel, of which LGN received approximately $4.4 million, constituting essentially the lion's share (Docket No. 352).

22. Despite Plaintiff's pivotal role, Defendants have refused to pay the agreed-upon 15% referral fee. On April 5, 2023, Silton emailed Richard J. Vita, Esq. a proposed fee allocation of $13,948.55 based solely on lodestar, excluding the referral fee, and stated that providing wiring instructions would constitute acceptance of this amount as final. This coercive tactic, explicitly conditioning payment on waiver of Plaintiff's referral fee claim, aimed to exploit Plaintiff's financial position and pressure it into relinquishing its rightful claim. Plaintiff immediately objected on the same day, reiterating the 15% agreement, clarifying that the lodestar allocation should not waive its referral fee rights, and requesting that the disputed amount be escrowed to preserve the status quo. Silton responded on April 6, 2023, falsely denying knowledge of the agreement, despite Isquith's clear recollection and confirmation that he had informed her of the referral fee obligation. On July 23, 2024, after months of withholding even the undisputed lodestar amount, Silton sent a letter enclosing a check for $13,948.55, representing the lodestar amount previously offered (July 23, 2024 correspondence attached hereto as Exhibit "A"). Plaintiff, through counsel, responded on July 30, 2024, accepting the payment under protest, asserting that the delayed payment was a further coercive attempt to compel acceptance of an unfairly reduced amount and reserving all rights to pursue the full referral fee (July 30, 2024 correspondence attached hereto as Exhibit "B").

23. Defendants persisted in denying the referral agreement, withheld all fee disbursements until July 2024, when only the Lodestar was disbursed, and stonewalled Plaintiff's good-faith efforts to resolve the dispute amicably. On July 23, 2024, Plaintiff issued a formal

M.G.L. c. 93A demand letter to Defendants, meticulously detailing their unfair and
deceptive practices—including false denials of the agreement despite Isquith's
affirmations, coercive tactics in the April 5, 2023 email, and withholding of fees to
pressure Plaintiff—and demanding payment of the 15% referral fee within 30 days (July
23, 2024 Demand Letter attached hereto as Exhibit "C"). Defendants' response on
August 15, 2024, baselessly denied the agreement, deflected responsibility to Isquith, and
disputed the applicability of M.G.L. c. 93A (August 15, 2024 Letter attached hereto as
Exhibit "D").

24. On January 9, 2025, the parties participated in mediation before Fouad Kurdi, Esq. of
Resolutions, LLC, in Boston, Massachusetts, in an attempt to resolve the dispute. The
mediation did not bear fruit, and despite its scheduled allotment for a full-day mediation,
ended prematurely.

25. Defendants' actions have caused Plaintiff substantial financial harm, depriving it of at
least $660,000 (15% of $4.4 million), plus interest.

COUNT I – BREACH OF CONTRACT

26. Plaintiff incorporates paragraphs 1 through 25 as if fully set forth herein.

27. Plaintiff and Defendants entered into a valid and enforceable contract whereby
Defendants agreed to pay Plaintiff 15% of the net attorneys' fees recovered in the Salmon
Antitrust Litigation in exchange for Plaintiff's referral of Wood Mountain and Golden
Goose. This agreement was confirmed through express communications by Isquith,
acting as Defendants' agent with actual or apparent authority, and accepted by Silton on
behalf of LGN.

28. Plaintiff fully performed its obligations by referring Wood Mountain and Golden Goose, whose participation enabled Defendants to secure co-lead counsel status and recover substantial fees.

29. Defendants materially breached this contract by failing to pay Plaintiff the agreed-upon 15% fee following the February 27, 2023 settlement, despite receiving approximately $4.4 million in attorneys' fees.

30. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages, including lost income of at least $660,000, plus interest, in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT (Alternative)

31. Plaintiff incorporates paragraphs 1 through 30 as if fully set forth herein.

32. This count is pleaded in the alternative, as permitted by Fed. R. Civ. P. 8(d)(2) and Mass. R. Civ. P. 8(e)(2).

33. Plaintiff conferred a substantial benefit on Defendants by referring Wood Mountain and Golden Goose, enabling Defendants to participate in and profit from the Salmon Antitrust Litigation.

34. Defendants knowingly accepted and retained these benefits, securing a co-lead counsel role and $4.4 million in fees, without compensating Plaintiff as agreed.

35. It would be inequitable for Defendants to retain these financial benefits without paying Plaintiff the reasonable value of its services, estimated at 15% of the net fees, or $660,000.

## COUNT III – PROMISSORY ESTOPPEL (Alternative)

36. Plaintiff incorporates paragraphs 1 through 35 as if fully set forth herein.

37. This count is pleaded in the alternative, as permitted by Fed. R. Civ. P. 8(d)(2) and Mass. R. Civ. P. 8(e)(2).

38. Defendants, through Isquith as their agent, made a clear and definite promise to pay Plaintiff 15% of the net attorneys' fees in exchange for the referral of Wood Mountain and Golden Goose.

39. Plaintiff reasonably relied on this promise, expending time and resources to secure the plaintiffs and forgoing other opportunities, with the expectation of compensation.

40. Defendants failed to fulfill this promise, causing Plaintiff financial harm of at least $660,000. Injustice can only be avoided by enforcing Defendants' promise.

## COUNT IV – FRAUDULENT MISREPRESENTATION

41. Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

42. Defendants, through Silton, knowingly misrepresented their awareness of the referral agreement, falsely denying its existence in correspondence dated April 6, June 1, and August 15, 2023, despite Isquith's confirmations.

43. These misrepresentations were made with the intent to deceive Plaintiff, induce it to abandon its claim, and accept a reduced or no payment.

44. Plaintiff reasonably relied on Defendants' initial assurances and subsequent denials, delaying enforcement efforts and incurring financial harm of at least $660,000, plus additional damages to be proven at trial.

## COUNT V – VIOLATION OF M.G.L. C. 93A, § 11

45. Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

46. Defendants, engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 1, committed unfair and deceptive acts, including: (a) falsely denying the referral agreement despite knowledge of its terms; (b) withholding Plaintiff's rightful fee; (c) using coercive tactics, such as the April 5, 2023 email, to pressure Plaintiff into waiving its claim; and (d) leveraging fee disbursements to oppress Plaintiff financially.

47. These acts were willful, knowing, and in bad faith, causing substantial injury to Plaintiff's business in violation of M.G.L. c. 93A, § 11.

48. Plaintiff is entitled to treble damages (up to $1,980,000), attorneys' fees, and costs under M.G.L. c. 93A, § 11.

## COUNT VI – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

50. The referral agreement included an implied covenant of good faith and fair dealing under Massachusetts law, obligating Defendants to act honestly and fairly.

51. Defendants breached this covenant by misrepresenting the agreement, coercing Plaintiff through fee allocation tactics, and withholding payment in bad faith.

52. This breach deprived Plaintiff of its contractual benefits, causing damages of at least $660,000.

## COUNT VII – QUANTUM MERUIT (Alternative)

53. Plaintiff incorporates paragraphs 1 through 52 as if fully set forth herein.

54. This count is pleaded in the alternative, as permitted by Fed. R. Civ. P. 8(d)(2) and Mass. R. Civ. P. 8(e)(2).

55. Plaintiff rendered substantial services to Defendants by referring Wood Mountain and Golden Goose, with the reasonable expectation of compensation.

56. Defendants accepted these services, benefiting from a co-lead counsel role and $4.4 million in fees, without paying Plaintiff.

57. Plaintiff is entitled to the reasonable value of its services, estimated at 15% of the net fees, or $660,000.

## COUNT VIII – CONTRACT IMPLIED IN FACT

58. Plaintiff incorporates paragraphs 1 through 57 as if fully set forth herein.

59. Through their conduct, course of dealing, and communications facilitated by Isquith, Defendants manifested an intent to be bound by an agreement to pay Plaintiff 15% of the net attorneys' fees recovered in the Salmon Antitrust Litigation in exchange for Plaintiff's referral of Wood Mountain and Golden Goose.

60. Specifically, Defendants' acceptance of Plaintiff's referrals, their reliance on Wood Mountain and Golden Goose to secure co-lead counsel status, and their failure to object to the 15% fee arrangement communicated by Isquith prior to and during the litigation, constituted an implied agreement under Massachusetts law.

61. Plaintiff reasonably understood Defendants' actions—including LGN's inclusion as co-counsel with Plaintiff's consent and subsequent prosecution of the case—as acceptance of the referral fee obligation.

12

62. Defendants breached this implied contract by refusing to pay Plaintiff the agreed-upon 15% fee following the February 27, 2023 settlement, despite reaping approximately $4.4 million in attorneys' fees.

63. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages of at least $660,000, plus interest, in an amount to be determined at trial.

## COUNT IX – ESTOPPEL BY AGENCY

64. Plaintiff incorporates paragraphs 1 through 63 as if fully set forth herein.

65. Defendants, through their conduct and communications, held out Fred T. Isquith Sr. as their agent with apparent authority to negotiate and confirm the referral fee agreement on their behalf in connection with the Salmon Antitrust Litigation.

66. Specifically, Isquith, as first court-appointed interim lead counsel, facilitated LGN's inclusion as co-counsel and communicated to Plaintiff that Defendants agreed to pay a 15% referral fee for the referral of Wood Mountain and Golden Goose. Defendants' acceptance of these referrals and their participation as co-lead counsel ratified Isquith's representations.

67. Plaintiff reasonably relied on Isquith's apparent authority, as Defendants provided no indication that Isquith lacked authority to bind them to the referral agreement, and Defendants benefited from Plaintiff's referrals by securing a co-lead counsel role and substantial fees.

68. Defendants are estopped from denying the validity of the referral agreement because their conduct induced Plaintiff's reasonable belief in Isquith's authority, and Plaintiff acted to its detriment by referring clients and forgoing other opportunities.

69. As a result of Defendants' actions, Plaintiff has suffered damages of at least $660,000, plus interest, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief against Defendants, jointly and severally:

A. Compensatory damages in an amount to be determined at trial, including but not limited to $660,000 representing the 15% referral fee;

B. Treble damages under M.G.L. c. 93A, § 11, up to $1,980,000, for Defendants' unfair and deceptive acts;

C. Pre- and post-judgment interest at the maximum rate allowed by law;

D. Attorneys' fees and costs as provided under M.G.L. c. 93A, § 11, and other applicable law;

E. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted,


VITA LAW OFFICES, P.C.,
Plaintiff,
By its attorney,

/s/ Christopher M. Cervantes
Christopher M. Cervantes, BBO# 694813
Cervantes Law, P.C.
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 997-4435
Email: CMC@CCervantesLaw.com

Dated: May 19, 2025

# EXHIBIT A

July 23, 2024 Correspondence

**Heidi M. Silton**
hmsilton@locklaw.com
T: 612.339.6900



MINNEAPOLIS
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179
P: 612.339.6900

July 23, 2024

Richard J. Vita
VITA LAW OFFICES PC
100 State Street, Suite 900
Boston, MA 02109

     Re:    Salmon Antitrust Litigation

Dear Richard:

    Thank you again for your work assisting co-lead counsel in prosecution of this case. A check is enclosed in the amount of $13,948.55. As you know from my email dated April 5, 2023, and subsequent communications, that $13,948.55 includes your firm's expenses (paid in full) and your firm's pro rata percentage of the lodestar.

    Please feel free to contact us with any questions. Thank you.

          Sincerely,

          LOCKRIDGE GRINDAL NAUEN PLLP

          Heidi M. Silton

Enclosure
c:    Fred T. Isquith, Sr.

**LOCKRIDGE GRINDAL NAUEN PLLP**

**The Huntington National Bank**
7 Easton Oval - EA4E62
Columbus OH 43219

RICHARD VITA

| | |
|---|---|
| Check No: | 1985763 |
| Date: | 7 /24/2024 |

Account Number:   1087274559

Account Name:   WOOD MOUNTAIN FISH LLC V MOWI ASA SETTLEMENT FUND

| REMITTANCE AMOUNT | |
|---|---|
| INCOME | PRINCIPAL |

DISP: 13
OFF  664
PAID TO                                        $13,948.55

PLEASE CASH WITHIN 90 DAYS
EMAIL DATED 07/24/2024

PLEASE DETACH AT PERFORATION

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT.  GREEN CHECK BACKGROUND AREA CHANGES TONE GRADUALLY FROM TOP TO BOTTOM.

The Huntington National Bank          Huntington          25-2/440          CHECK NUMBER:          1985763
COLUMBUS, OHIO

PLEASE CASH WITHIN 90 DAYS                    1087274559                              JULY 24, 2024
EMAIL DATED 07/24/2024                    WOOD MOUNTAIN FISH LLC V MOWI ASA SETTLEMENT FUND

$13,948.55

PAY EXACTLY: THIRTEEN THOUSAND NINE HUNDRED FORTY EIGHT DOLLARS 55
                        CENTS

PAY TO THE ORDER:   RICHARD VITA                              *Joseph A Zaremba*

⑈000198576③⑈ ⑆044000024⑆ 0189251732⑆

DO NOT WRITE, STAMP, OR SIGN BELOW THIS LINE

Please look for the following check security features before accepting this document. If not present, do not negotiate the document.

VOID Pantograph - The face of this document has a multi-tone background. The words "VOID" will appear when photocopied.

Microprinting - Under magnification, the top border on the front of the check should read: ADVANCED DOCUMENT SECURITY WITH A MULTI-TONE PROTECTION PANTOGRAPH BY HUNTINGTON.

0500005465660000000100100100010000

# EXHIBIT B

July 23, 2024 Correspondence



Christopher M. Cervantes**
Leslie L. Cervantes*

**Admitted in MA & TX
*Admitted in TX

July 30, 2024

*Via Electronic Mail*
Heidi M. Silton, Esq.
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401-2159

**Re:    Indirect Purchaser North Atlantic Farmed Salmon Antitrust
           Referral Fee Dispute**

Dear Attorney Silton,

I am writing on behalf of Richard J. Vita, Esq. and Vita Law Offices, P.C., in response to your letter dated July 23, 2024, and the enclosed check for $13,948.55.

While we acknowledge receipt of the check, it must be stated unequivocally that this payment is further evidence of the unfair tactics employed by Lockridge Grindal Nauen P.L.L.P. (LGN) in withholding amounts due and payable in an effort to coerce Mr. Vita into accepting an amount less than what he is rightfully owed. The lodestar amount has been wrongly withheld until now, and this delay has caused undue financial pressure on Vita Law Offices.

This check, issued only after extensive communications and demands, reflects a coercive attempt to compel acceptance of an unfairly reduced amount. The timing and conditions of this payment were clearly intended to pressure Mr. Vita into relinquishing his rightful claims under the original referral fee agreement. Such actions are in direct violation of the principles of fair dealing and constitute deceptive practices under applicable laws, as detailed in our previous demand letter dated July 23, 2024.

Please be advised that the receipt of this payment is accepted under objection and protest. Mr. Vita reserves all rights to pursue the remaining amounts owed and intends to proceed with his claims for the full referral fees due. The acceptance of this payment does not constitute a waiver of any claims or rights under the original referral agreement or any applicable laws.

**100 STATE STREET, SUITE 900, BOSTON, MA 02109**
**Tel: (617) 997-4425 | Fax: (617) 977-9566 | CCervantesLaw.com**

We reiterate our demand for the immediate payment of the full 15% of the total attorney fees from the settlement, net of expenses and costs, as originally agreed. This demand is consistent with the terms explicitly communicated and agreed upon by Fred T. Isquith Sr. and subsequently confirmed with you. Failure to comply with this demand within 30 days of the date of our original correspondence dated July 23, 2024, will result in further legal action, including the pursuit of treble damages and attorney fees as permitted under the law.

Please direct all further communications regarding this matter to my attention.

Very truly yours,

*/s/ Christopher M. Cervantes*

Christopher M. Cervantes

CMC/lac

cc:    Richard Vita, Esq.
       Vita Law Offices, P.C.
       100 State St
       Boston, MA 02109

# EXHIBIT C

July 23, 2024 Demand Letter



Christopher M. Cervantes**
Leslie L. Cervantes*

**Admitted in MA & TX
*Admitted in TX

July 23, 2024

***Via Certified Mail/RRR***
Heidi M. Silton, Esq. individually, and to
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401-2159

**Re:   Indirect Purchaser North Atlantic Farmed Salmon Antitrust
Referral Fee Dispute and Demand Pursuant to Massachusetts
General Laws Chapter 93A**

Dear Attorney Silton,

I represent Richard Vita, Esq. and Vita Law Offices, P.C. (hereinafter collectively
referred to as "Vita Law Offices" or "Vita") in relation to its referral fee dispute with
Lockridge Grindal Nauen PLLP ("LGN") concerning the representation of Wood
Mountain Fish LLC and Stephen T. DeAngelis, Inc. d/b/a Golden Goose Markets, in
the Indirect Purchaser North American Farmed Salmon Antitrust litigation. This
correspondence serves as a formal demand letter pursuant to the Massachusetts
General Laws (M.G.L.) Chapter 93A, asserting unfair and deceptive acts in the
conduct of business to you in your individual capacity and to Lockridge Grindal
Nauen P.L.L.P.

**Background and Statement of Facts**

In 2019, Vita referred Wood Mountain Fish LLC to Fred T. Isquith Sr., then the
managing senior partner of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf
Haldenstein"), with an agreement that entitled Vita Law Offices to 15% of net legal
fees from any subsequent litigation settlements. This arrangement, acknowledged
by all involved parties, including Interim Lead Counsel and later Co-Lead Counsel,
was understood to be shared among the law firms who agreed to receive monetary
and percentage referral fees from recovery. Vita Law Offices then referred Stephen
T. DeAngelis Inc. d/b/a Golden Goose Markets, after Fred Isquith Sr. advised Vita
that a new plaintiff from Massachusetts would be necessary due to the fact that the
defendants' law firm had indicated that Wood Mountain Fish LLC would be

considered a pass-through to its customers and advised that the case would not settle but instead be litigated to appeal, if necessary. This strategic decision was made to strengthen the case and ensure the representation of a suitable plaintiff, and further demonstrated the role of Vita in the litigation which ultimately led to successful recovery and settlement.

Prior to filing the first Indirect Purchaser Complaint, Fred T. Isquith Sr. provided Mr. Vita with a copy of the draft complaint, which included LGN as counsel for the plaintiff. Upon review, Mr. Vita contacted Fred Isquith Sr. to inquire why LGN was added to the draft complaint and whether LGN had its own client to represent. Upon learning that LGN did not have its own client, Mr. Vita consented to their inclusion on the express condition that LGN agreed to honor and pay the same 15% referral fee arrangement that existed with Wolf Haldenstein. Fred Isquith Sr. acknowledged this condition and indicated he would inform Heidi Silton, expressing certainty that it would be acceptable. Subsequently, Mr. Isquith Sr. confirmed with Mr. Vita that he had indeed informed Ms. Silton and that she had accepted the arrangement.

As the litigation progressed and an agreed-upon settlement was reached, you communicated a proposed fee allocation to Vita on April 5, 2023. This proposal, limited to lodestar fees, contained language that counsel would agree to accept the amount as fees in the litigation, effectively an attempt to coerce Vita into accepting this allocation as final, thereby waiving any further claims to the referral fees due under the original agreement. This communication was a clear attempt to unilaterally alter the terms of the referral fee arrangement. Despite the fact that Vita had explicitly conditioned LGN's inclusion in the first filed complaint on LGN's agreement to honor the existing referral fee arrangement with Wolf Haldenstein, LGN attempted to force Vita into accepting new terms. The inclusion of language stating that counsel would accept this as the final fee arrangement was a deceptive tactic designed to mislead and coerce Vita into forfeiting his rightful claims under the original referral agreement.

Specifically, in the April 5, 2023 email, you proposed an allocation of $13,948.55, conditioned upon the receipt of wiring instructions, stating: "receipt of your wiring instructions will be considered acceptance of your allocated fees and expenses." This conditional statement was a coercive tactic to pressure Mr. Vita into accepting only the adjusted lodestar payment and waiving his right to the 15% referral fee arrangement. Despite Mr. Vita's email to you to clarify and state the language would not apply to referral fees he was due, you refused to do so and failed repeatedly to wire Vita the lodestar fees they were entitled to.

Page 2 of 7

Mr. Vita responded on the same day, emphasizing his request for the referral fee arrangement to be honored and the amount to be set aside in escrow from all co-counsel distributions. He reiterated that Vita Law Offices was entitled to 15% of the total fees from the litigation, net of expenses and costs, and that without such an agreement, the firm would not have consented to LGN's inclusion in the case.

Your response on April 6, 2023, claimed unawareness of the referral agreement, despite Mr. Isquith's distinct recollection and affirmation of advising you about the referral fee obligation. Mr. Vita's email further clarified the terms of the referral fee and requested that the allocation not be used as a means to release Vita's claims to the referral fees.

In subsequent correspondence, particularly on April 19, 2023, you continued to deny any knowledge of the referral agreement and requested documentation to support Mr. Vita's claims. Mr. Vita reiterated the existence of the agreement and highlighted Mr. Isquith's recollection as a witness to the referral fee arrangement.

On May 24, 2023, Mr. Vita sent a letter reiterating the referral fee agreement and highlighting the testimony of Fred Isquith Sr., who confirmed the discussion and your agreement to the referral fee arrangement. Despite these clarifications, you continued to withhold all legal fee disbursements, leveraging the situation to pressure Vita into abandoning their rightful claims.

On June 1, 2023, you responded, rejecting the claim and stating that there was no contractual obligation for LGN to pay the referral fees. This response disregarded the consistent affirmations from Mr. Isquith and Mr. Vita, demonstrating a pattern of unfair and deceptive practices.

Despite multiple attempts by Mr. Vita to clarify and resolve the dispute, including emails dated April 19, 2023, and April 20, 2023, your firm maintained its position of denying the referral fee agreement. This ongoing denial and refusal to release the rightful fees are indicative of willful and knowing violations of M.G.L. c. 93A.

## Violations of Law and of M.G.L. c. 93A

The Massachusetts Consumer Protection Act (M.G.L. c. 93A) was designed to protect businesses and consumers from unfair or deceptive acts and practices in trade or commerce. Under this statute, a practice is considered unfair if it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers (or competitors or other businessmen).

## Coercive Tactics and Conditional Statements

Your email on April 5, 2023, conditioning the receipt of wiring instructions on the acceptance of the proposed fee allocation, represents a coercive tactic. This is a clear violation of M.G.L. c. 93A as your actions sought to exploit Mr. Vita's position and force him into accepting terms that were not part of the original agreement. Such behavior is considered oppressive and unethical, falling squarely under the statute's definition of unfair practices. Additionally, the conditional nature of your communication, which attempted to finalize an unfavorable fee arrangement under duress, demonstrates a blatant disregard for fair dealing and contractual integrity. This attempt to exploit the financial needs of Vita Law Offices to compel acceptance of unjust terms is unequivocally a coercive tactic that M.G.L. c. 93A explicitly aims to prevent.

## False Statements and Denial of Agreement

Your repeated claims of unawareness of the referral agreement, despite Mr. Isquith's clear recollection and confirmation, constitute deceptive acts. Misrepresenting the existence of an agreement to avoid financial obligations is a textbook example of deceptive practices under M.G.L. c. 93A. These false statements were intended to mislead Mr. Vita and deny him his rightful compensation, causing substantial injury to his business. The pattern of denying the referral fee agreement, despite substantial evidence and clear communication confirming its terms, further exemplifies the deceptive nature of you and LGN's conduct.

## Withholding Fees and Leveraging Pressure

The refusal to honor the referral fee arrangement and the subsequent withholding of all legal fee disbursements until Mr. Vita provided wiring instructions under the new terms further demonstrates willful and knowing violations of M.G.L. c. 93A. This action placed undue pressure on Vita Law Offices, leveraging their financial needs to coerce agreement to unfair terms. This conduct is both unethical and illegal under Massachusetts law, meeting the statute's criteria for unfair and deceptive acts.

M.G.L. c. 93A §2 (a) declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as unlawful. In accordance with Section 9, any person engaged in business whose trade or commerce is

adversely affected by such unfair or deceptive conduct may seek relief in the form of damages, including up to treble damages for willful or knowing violations, and recovery of attorney fees.

## Breach of Contract

The referral agreement between Vita Law Offices and LGN constituted a valid and enforceable contract. The agreement was explicitly communicated and agreed upon by Fred T. Isquith Sr. and subsequently confirmed with LGN vis-à-vis Heidi Silton, Esq. By refusing to pay the agreed referral fees and attempting to unilaterally alter the terms of the agreement, LGN has breached the contract. This breach has directly caused financial harm to Vita Law Offices, depriving them of the compensation rightfully owed for their role in referring clients essential to the litigation.

## Unjust Enrichment

But for Vita's referral of Wood Mountain Fish LLC and Stephen T. DeAngelis Inc. d/b/a Golden Goose Markets, LGN would not have secured a lead role in the litigation and would not have recovered approximately $4.4 million in attorney fees. This substantial financial benefit was directly attributable to the referrals provided by Vita Law Offices. By withholding the agreed-upon referral fees, LGN has unfairly retained benefits that rightfully belong to Vita Law Offices, resulting in unjust enrichment. Equity demands that LGN disgorge these unjustly retained benefits and compensate Vita Law Offices accordingly.

## Promissory Estoppel

LGN, through its representations and agreements made by Fred T. Isquith Sr., induced Mr. Vita to believe that the 15% referral fee would be honored. Relying on these assurances, Mr. Vita consented to LGN's inclusion in the case and facilitated the referral of critical clients. LGN's subsequent refusal to honor this promise has caused significant detriment to Vita Law Offices. LGN should be estopped from denying the referral fee agreement and must fulfill its promise to pay the 15% referral fee.

## Fraudulent Misrepresentation

LGN, vis-à-vis Heidi Silton, Esq., falsely claimed unawareness of the referral fee agreement despite clear evidence and acknowledgments from Fred T. Isquith Sr. These false statements were made with the intent to deceive Vita Law Offices and to induce an acceptance of fees in an amount far less than actually owed. The

intentional misrepresentation of material facts by LGN constitutes fraud, entitling Vita Law Offices to damages for the harm caused by this deceitful conduct.

## Impact and Damages

Your firm's actions have directly caused financial harm to Vita Law Offices by denying them the rightful referral fees. The consistent misrepresentation and pressure tactics used to avoid fulfilling contractual obligations are clear violations of M.G.L. c. 93A. Given the willful nature of these actions, Vita Law Offices is entitled to seek treble damages and attorney fees as allowed under the statute.

## Demand for Relief

Therefore, as a final attempt to resolve this matter amicably and avoid extensive litigation, Vita Law Offices hereby demands the immediate payment of the full 15% of the total attorney fees from the settlement, net of expenses and costs, as originally agreed. Lockridge Grindal Nauen P.L.L.P. recovered approximately $4.4 million in attorney fees from this matter. Without the referral of Vita Law Offices and the inclusion of their client, there would have been no lead or co-lead opportunity for LGN. This amount is due and payable within 30 days from the date of this letter, failing which I have been instructed to initiate litigation against all involved parties. My client has instructed us to pursue all available legal remedies, including the filing of a lawsuit seeking treble damages and attorney fees as permitted under the color of law.

## Conclusion

This demand is made in good faith and with the earnest hope that Lockridge Grindal Nauen PLLP will rectify this situation promptly. Your immediate attention to this matter is not only appreciated but expected, as it reflects on the integrity and professionalism expected in legal practice and adherence to contractual and statutory obligations.

Please direct all further communications regarding this matter to my attention.

Very truly yours,

Christopher M. Cervantes

CMC/lac

cc:    *Via First-Class*
Richard Vita, Esq.
Vita Law Offices, P.C.
100 State St
Boston, MA 02109

*Via Certified Mail/RRR & First-Class*
H. Theodore Grindal, Esq.
152 N Sedgwick Rd
Sedgwick, ME 04676

*Via Certified Mail/RRR & First-Class*
Charles N. Nauen, Esq.
2109 Doswell Ave
Saint Paul, MN 55108

*Via Certified Mail/RRR & First-Class*
Richard Lockridge, Esq.
11170 Aqua Vista St, Apt B302
Studio City, CA 91602

# EXHIBIT D

August 15, 2024 Correspondence

**Heidi M. Silton**
hmsilton@locklaw.com
T: 612.339.6900



**MINNEAPOLIS**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179
P: 612.339.6900

August 15, 2024

**VIA EMAIL**

Christopher M. Cervantes
CERVANTES LAW
100 State Street Suite 900
Boston, MA 02109
CMC@CervantesLaw.com s

> Re:    **Salmon Antitrust Litigation**

Dear Mr. Cervantes,

I write in response to your letter dated August 12, 2024.[1]

**I.      Chapter 93A Does Not Fit Vita's Allegations.**

The conduct your clients, Richard Vita and Vita Law Offices, P.C. (collectively "Vita"), allege does not fall within the ambit of Chapter 93A.

First, purely "private" or "intra-enterprise" transactions do not fall within the scope of Chapter 93A. LGN offers legal services to the public, it does not offer referral fees to the public— the type of transaction claimed here. *See KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 23-24 (1st Cir. 2003); *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008).

Second, the alleged conduct did not occur in "trade or commerce." Although the practice of law can constitute trade or commerce, LGN did not provide legal services **to Vita**, and Vita was not LGN's client. *See Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 462 (1997). When considering whether parties were engaged in "trade or commerce" with each other such that the acts or practices complained of occurred in a "business context," courts apply the test articulated in *Begelfer v. Najaran*, 381 Mass. 177, 190-91 (1980). *See Milliken*, 451 Mass. at 563. The *Begelfer* test requires an assessment of "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. . . . Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons . . . and whether the participant played an active part in the transaction." *Id.* None of the factors indicate LGN was engaged in "trade or commerce" with Vita and, "therefore, there can be no recovery under c. 93A." *Tetrault*, 425 Mass. at 463. If Vita has authority supporting the

---

[1] Your August 12, 2024 letter references that Vita sent a 93A demand letter on July 8, 2024. LGN has no record of any letter sent on that date. The only 93A demand letter LGN has received from you is dated July 23, 2024.

**LOCKRIDGE GRINDAL NAUEN PLLP**

Christopher M. Cervantes
CERVANTES LAW
August 15, 2024
Page 2

contention that LGN was engaged in trade or commerce with respect to Vita, please promptly provide it.

Third, businesses bringing 93A claims are held to a higher standard in showing unfair or deceptive conduct. *See, e.g.*, *H1 Lincoln, Inc. v. South Washington Street, LLC*, 489 Mass. 1, 15 n.10 (2022); *Giuffrida v. High Country Investor, Inc.*, 73 Mass. App. Ct. 225, 238 (2008). Vita's claims appear to sound in contract, but breach of contract alone does not constitute an unfair or deceptive trade practice unless accompanied by extortionate or similarly unfair conduct. *See Secure Our City, Inc. v. ECI Sys., LLC*, 594 F. Supp. 3d 96, 105 (D. Mass. 2022); *Jofran Sales, Inc. v. Watkins & Shepard Trucking, Inc.*, 216 F. Supp. 3d 206, 215 (D. Mass. 2016). Vita has not articulated any unfair or deceptive conduct by LGN.

Fourth, the claimed misconduct did not occur "primarily and substantially" within Massachusetts. *See* Mass. Gen. Laws ch. 93A, § 11. LGN is headquartered in Minnesota, and at all relevant times did not have any attorneys within Massachusetts. The underlying litigation was in the Southern District of Florida. Fred T. Isquith Sr., who Vita claims entered a fee-splitting agreement with Vita, resides and practices law in New York. Prior to Vita raising this dispute, LGN and Vita never had any communications or dealings tied to Massachusetts; LGN's communications with Vita were limited to collecting time and expense reports by email. While no injury has occurred, importantly, "a place of injury within Massachusetts is not a sufficient basis for finding that conduct occurred 'primary and substantially' within the Commonwealth" under Chapter 93A. *In re Intuniv Antitrust Litig.*, 496 F. Supp. 3d 639, 682 (D. Mass. 2020).

## II.     Vita's Claim Fails on the Merits.

Your suggestion that LGN has failed to explain its position to Vita is baseless. LGN explained why Vita's claims are deficient in a letter to Mr. Vita dated June 1, 2023. LGN notes that between April 5, 2023 and August 16, 2023, our firm already had extensive telephonic and email correspondence with Vita concerning this matter, where LGN asked Vita to provide a basis and documentation to support Vita's belief that he is owed additional fees.

As explained in that letter, Vita has no claim against LGN. LGN never agreed to pay Vita 15% of its fees earned in this litigation, and it therefore has no contractual obligation to Vita. *See, e.g.*, *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) ("The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration.").

Vita claims to have entered into a referral agreement with Isquith for 15% of the fees earned by all firms in the entire case. If that is true, any claim or remedy Vita has lies against Isquith, not LGN.[2] Neither Vita nor Isquith informed LGN of any referral agreement purporting to affect LGN

---

[2] If this dispute proceeds to litigation, LGN anticipates joining Isquith as a necessary party, and seeking indemnification from Isquith of any judgment awarded to Vita. Isquith, as co-lead counsel, jointly determined the allocation of attorneys' fees from the fees awarded by the Court. Isquith is the only party claimed to have discussed payment of a referral fee to Vita. And Isquith never

Christopher M. Cervantes
CERVANTES LAW
August 15, 2024
Page 3

until after final approval of the class action settlement, and Vita has not produced any evidence to the contrary, notwithstanding LGN's requests.

LGN requests again that you provide any documents or other evidence showing: (1) Vita's written contingent fee agreement with Wood Mountain Fish; (2) Vita's claimed referral fee agreement with Isquith or his law firm, including the client's written consent and agreement; and (3) any writing or communication relating in any way to this claimed referral fee obligation to LGN. We conclude from Vita's silence and our investigation that there is no such documentation. If you believe there is, please provide it as soon as possible.

The ethical rules require that a referral fee agreement must be in writing and include the client's written acknowledgment and acceptance. *See* Minn. R. Prof. Cond. 1.5(e); RRTFB 4-15(f)(2); N.Y. R. Prof. Cond. 1.5(g)(2); Mass. R. Prof. Cond. 1.5(c), (e). Specifically, Vita was required to obtain Wood Mountain Fish's written agreement to any referral fee, including the share to be paid by each firm, including LGN. *See* Minn. R. Prof'l Cond. 1.5(e)(2) ("A division of a fee between lawyers who are not in the same firm may be made only if… the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing."). If Vita did not do so, this would constitute an ethical violation that would render his claimed referral agreement unenforceable. Vita cannot enforce a supposed agreement that violates the rules of professional conduct because it is void as against public policy. *See, e.g.*, *Harmon Parker, P.A. v. Santek Mgmt., LLC*, 311 So. 3d 213, 218 (Fla. Dist. Ct. App. 2020); *Christensen v. Eggen*, 577 N.W.2d 221, 225 (Minn. 1998). Nor can Vita recover on alternative claims for the same conduct, such as promissory estoppel or unjust enrichment. *See Soderberg & Vail, LLC v. Meshbesher & Spence, Ltd.*, No. A15-0088, 2016 WL 22251, at *4 (Minn. Ct. App. Jan. 4, 2016).

## III.   Mediation Is Required Dispute Resolution; Litigation May Follow Before Judge Smith in the Southern District of Florida.

As you know from our previous correspondence and the Court's order granting final approval of the class action settlement, this dispute must first be mediated, and LGN has initiated the mediation process under the Court's order. If not resolved through mediation, then Judge Smith in the Southern District of Florida has jurisdiction.[3] If Vita ignores that Court order and instead proceeds to file and serve a complaint, LGN will move to dismiss or transfer the action to Judge Smith in the Southern District of Florida, and reserves the right to seek all available remedies and sanctions against Vita. *See, e.g.*, 28 U.S.C. § 1927; Fed. R. Civ. P. 11; Mass. Gen. Laws ch. 231, § 6F; Mass. R. Civ. P. 11.

---

informed LGN of its alleged obligation to pay any referral fee to Vita, let alone an unreasonable 15% fee for referring a single indirect purchaser plaintiff.

[3] The Court had ordered the parties to mediate any disputes over attorneys' fees before the Honorable Edward Infante (ret.). Judge Infante is unavailable to mediate this dispute. LGN is therefore filing a motion for appointment of alternative mediator for attorney fee dispute.

Date Filed 5/19/2025 4:58 PM
Superior Court - Suffolk
Docket Number

Christopher M. Cervantes
CERVANTES LAW
August 15, 2024
Page 4

### IV.    LGN Is Willing to Resolve This Claim.

As required by Court order, LGN is willing to discuss Vita's claim in mediation. Any resolution must recognize the challenges Vita's claims face. Because mediation of this dispute is mandatory, LGN is not making a settlement offer at this time. Any settlement offer LGN makes in mediation shall constitute its settlement offer under Chapter 93A.

Sincerely,

LOCKRIDGE GRINDAL NAUEN PLLP

Heidi M. Silton

c:  Charles N. Nauen
    W. Joseph Bruckner
    David J. Zoll

| CIVIL ACTION COVER SHEET | | **Massachusetts Trial Court** |
|---|---|---|
| | DOCKET NUMBER | **Superior Court** |
| | | **COUNTY** Suffolk Superior Court (Boston) |

| Plaintiff | Vita Law Offices, P.C. | Defendant: | Lockridge Grindal Nauen P.L.L.P |
|---|---|---|---|
| ADDRESS: | | ADDRESS: | 100 Washington Ave South, Suite 2200, Minneapolis, MN |
| | | | 55401 |
| | | | |
| Plaintiff Attorney: | Christopher M. Cervantes | Defendant: | Heidi M. Silton, |
| ADDRESS: | Cervantes Law, P.C., 100 State St Ste 900, Boston, MA 02109 | ADDRESS: | 2615 Inglewood Ave S, Minneapolis, MN 55416 |
| | | | |
| | | | |
| BBO: | 694813 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99 | Other Contract/Business Dispute | F | ☒ YES    ☐ NO |

**\*If "Other" please describe:**

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES    ☐ NO | ☐ YES    ☒ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date
    1. Total hospital expenses
    2. Total doctor expenses
    3. Total chiropractic expenses
    4. Total physical therapy expenses
    5. Total other expenses (describe below)

    Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

    TOTAL (A-F): $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Breach of Agreement to Pay Referral Fee | $1,980,000.00 |
| | Total | $1,980,000.00 |

| Signature of Attorney/Self-Represented Plaintiff: X  /s/ Christopher M. Cervantes | Date: | May 19, 2025 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  /s/ Christopher M. Cervantes | Date: | May 19, 2025 |
|---|---|---|

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†*

| | | |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | | |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | | |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | | |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (A) |
| PE1 | Administrative Action involving an Incarcerated Party | (A) |

### TR Torts

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | | |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | | |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (F) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | | |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | | |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E(X) | |

### AA Administrative Civil Actions

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | | |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | | |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S(X) | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | _F_ | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2584CV01365 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Vita Law Offices, P.C. vs. Lockridge Grindal Nauen P.L.L.P. et al | John E Powers, III Suffolk County Civil |
|---|---|

| TO: Christopher Michael Cervantes, Esq. CERVANTES LAW, P.C. 100 State St Suite 900 Boston, MA 02109 | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**           **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 08/18/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 09/16/2025 | |
| All motions under MRCP 12, 19, and 20 | 09/16/2025 | 10/16/2025 | 11/17/2025 |
| All motions under MRCP 15 | 09/16/2025 | 10/16/2025 | 11/17/2025 |
| All discovery requests **and depositions** served and non-expert depositions completed | 03/16/2026 | | |
| All motions under MRCP 56 | 04/14/2026 | 05/14/2026 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/11/2026 |
| Case shall be resolved and judgment shall issue by | | | 05/19/2027 |

**The final pre-trial deadline is not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 05/20/2025 | ASSISTANT CLERK Philip Drapos | PHONE (617)788-8144 |
|---|---|---|

Date/Time Printed: 05-20-2025 08:54:41                                          SCV026\ 08/2018