UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No.: 1:25-cv-11518-BEM

VITA LAW OFFICES, P.C.,

    Plaintiff,

v.

LOCKRIDGE GRINDAL NAUEN
P.L.L.P. and HEIDI M. SILTON, ESQ.,

    Defendants.

**<u>PLAINTIFF COUNSEL'S SUPPLEMENTAL RESPONSE TO ORDER TO SHOW CAUSE (ECF NO. 26)</u>**

    Plaintiff Vita Law Offices, P.C. ("Plaintiff" or "Vita"), through its counsel Christopher M. Cervantes, respectfully submits this supplemental response to the Court's Order to Show Cause (the "OSC") dated July 1, 2025 (Dkts. 26, Plaintiff's Original Response to the OSC and, 23, the Court's original OSC). Counsel repeats and reiterates his acknowledgement of the seriousness of the issues raised and continues to express sincere regret for the inaccuracies in its submissions.

    Counsel wishes to extend his continued apology to both the Court and the defendants and their counsel. As stated in Counsel's previous submission, these errors were unintentional, resulting from the inadvertent alteration of quoted language during the use of an automated editing tool for grammar and syntax refinement. Counsel in his supplemental response has provided a declaration of Plaintiff's counsel, a table of all authorities cited in Plaintiff's submissions, and a table of authorities with errors attached hereto as Exhibit "A" through "C".

1

I.     **Admission of Errors**

In Plaintiff Counsel's original response, Counsel discovered thirteen (13) instances of error (ECF 26 at 2, ECF 26-1 ¶ 11). In response to the Court's Order on July 16, 2025 (Dkt. 27), counsel underwent another review of Plaintiff's filings and discovered an additional five (5) errors (Exhibit A ¶ 6, Exhibit B, Exhibit C). These errors misattribute quotes, contain incorrect citations, and clerical oversights (*See* Exhibits A, B and C). Each is addressed in turn below.

On Docket 14-1 at page 6, Plaintiff cited *Danca v. Private Health Care Sys.*, 185 F.3d 1 (1st Cir. 1999), and quoted the phrase "heavy burden." Upon review, the word "heavy" does not appear in *Danca*. The phrase appears to have originated from a separate case in our research folder, *Nordin v. PB&J Resorts, LLC*, 2016 DNH 193 at 2, stating "that burden is a heavy one," and was mistakenly associated with *Danca*. Counsel is not conclusive whether or not this was from using Microsoft Copilot or a clerical error in adding the single word "heavy".

In Docket 14-1 at pages 10, 11, 14, and 16, Plaintiff cited *EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, and repeatedly used the incorrect Westlaw citation: 2018 WL 6786065. The correct citation is 2018 WL 6790486. This was a clerical citation error that persisted across multiple pages. In addition, several quotes attributed to *EQT*, including the phrases "mini-trials," "jurisdictional gamesmanship," and "erode the clarity and simplicity," were not found in the opinion. Counsel has concluded that these phrases were characterizations manipulated by Microsoft Copilot in response to Counsel's input requesting a change to the tone, structure, or flow of a paragraph.

On page 15 of Docket 14-1, Plaintiff cited *Danca* again and quoted the phrase "particularly heavy" in reference to the burden of proof. However, the word "particularly" does not appear in the *Danca* opinion when discussing jurisdiction, it appears in the text of opinion

when discussing the face of the complaint, "particularly powerful." *Danca v. Private Health Care Sys.*, 185 F.3d 1 at 4 (1st Cir. 1999). This reflects another instance of paraphrasing presented as direct quotation. In this instance and with full candor to the Court, Counsel cannot be certain if the one-word mishap is attributed to Microsoft Copilot or clerical error.

Also, on page 15 of Docket 14-1, Plaintiff quoted *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), for the phrase "citizenship of each member of an unincorporated entity counts." This is a non-verbatim paraphrase of the actual language: "The citizenship of an unincorporated entity, such as a partnership, is determined by the citizenship of all of its members. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990) (limited partnership)." *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 at 54 (1st Cir. 2006) Although the paraphrased meaning is consistent, it was erroneously formatted as a direct quote. This is directly attributable to Microsoft Copilot making the paragraph "more concise or more to the point," as directed by the user. Again, Counsel did not intend for any quotations to be altered, and it occurred unbeknownst to him; nevertheless, Counsel is aware that the responsibility of accuracy lies with him and not a tool.

On page 16 of Docket 14-1, Plaintiff quoted *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990), for the phrase "predictability and judicial efficiency in the determination of diversity jurisdiction." Counsel again attributes this to Microsoft Copilot's response to a command to structure a paragraph's tone or structure in a particular manner.

In Docket 20 at page 3, Plaintiff again cited *Pramco* and attributed the phrase "the citizenship of an LLP is determined by considering the citizenship of all its partners." This language is not used in the case. The actual language from the First Circuit is that "[t]he citizenship of an unincorporated entity, such as a partnership, is determined by the citizenship of

3

all of its members." This error was most likely from Microsoft Copilot in the first instance, at Docket 14-1 at 15, and repeated by copying from the original submission to the subsequent submission and relying on the accuracy of what Counsel thought was the citation that reflected is actual research.

On the same page, Plaintiff cited *EQT* again with the same incorrect Westlaw citation and attributed the quote: "The Court finds that the citizenship of non-equity partners must be considered in determining the citizenship of an LLP for diversity purposes." This exact phrasing does not appear in the opinion. The opinion discusses the effect of non-equity partner Gormly's citizenship on diversity jurisdiction, but the quotation misstates the wording.

On page 5 of Docket 20, Plaintiff again attributed to *Pramco* the phrase "the citizenship of an LLP is determined by considering the citizenship of all its partners." This repeats the same paraphrasing error noted above.

Also on page 5, Plaintiff cited *Carden* and quoted: "the relevant inquiry is not whether state law recognizes a particular individual as a partner, but rather whether that individual is a member of the unincorporated association for purposes of federal jurisdiction." This quotation does not appear in the *Carden* opinion. The quotation is a synthesized argument of counsel that should not have been presented with quotation marks. Counsel's only conclusion in this instance is again, that Microsoft's Copilot, when prompted to make grammatical changes or 'strengthen' the tone of a paragraph erroneously made changes.

On page 5 of Docket 20, Counsel also quoted *Carden* for the phrase "litigation-driven reassessments of an entity's internal structure." That language is not found in the opinion and appears to be an editorial summary rather than a direct quote.

4

On page 8 of Docket 20, Counsel repeated the same misquote from *Carden* regarding state law recognition of partners, again using quotation marks where argument would have been appropriate and not quotations.

On page 8, Counsel again cited *EQT* and quoted "jurisdictional gamesmanship," which is not found in the opinion. This is consistent with the prior *EQT* misquotes noted above.

Finally, on page 9 of Docket 20, Plaintiff again misquoted both *EQT* and *Carden*. *EQT* was cited for "erode the clarity and simplicity" and "jurisdictional gamesmanship," neither of which appear in the opinion. *Carden* was again cited for "litigation-driven reassessments of an entity's internal structure," which also does not appear in the opinion.

Counsel acknowledges all of the above errors, which arose on reliance on incorrect citation materials inadvertently changed by Microsoft Copilot rephrasing. Counsel takes full responsibility for these inaccuracies and reiterates that none were made with the intent of misleading the Court or Defendants and their counsel. This entire episode has been a debacle and embarrassment for Counsel and appears to have been the lapse in oversight of using a tool embedded in Microsoft Word to aid in writing which then turned into a nightmare of mistakes that slipped past Counsel at the time of filing.

II.     **Remedial Measures**

Counsel has taken remedial measures and implemented new internal procedures forbidding the use of *any* AI tool in the use of filings with any court or tribunal. Counsel has also implemented a practice of verifying all quoted or cited material going forward. Counsel has also begun researching how to disable the tool entirely so that it cannot be prompted to make changes in Microsoft Word. *See* 26-1 ¶ 20.

Counsel has also begun to search for several continuing legal education courses which cover AI and Legal Ethics. Counsel remains committed to restoring the Court's confidence through his transparency in this debacle.

### III. Distinction of Counsel's Conduct from Precedents Involving AI Misuse

#### A. Precedential Actions in Other Jurisdictions

In this instance, Counsel cited to authorities two hundred twenty-six (226) times. Of those two hundred twenty-six (226) cases, each case was an actual authority and not a fictious or "hallucinated AI case" – representative that Counsel did in fact complete his own legal research and compiled authorities which supported the legal arguments raised in Plaintiff's submissions. In contrast, many cases where the Court has issued sanctions appear to have taken place where the filer depended wholly on the AI tool to research and draft the submission itself. To wit, in *Wadsworth v. Walmart,* respondents "filed Motions in Limine that cited nine cases, but eight did not exist." 348 F.R.D. 489 at 493 (D. Wyo. 2025). The Respondents went on to admit that these cases were not real and "hallucinated" by an AI. *Id*. Three attorneys were involved in the filings, albeit, each had a different involvement and scope in the drafting and submission of the filings; however, the court went on to state, "[the Respondents are] attorneys at a prominent national law firm with presumably deep resources." *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489 at 498 (D. Wyo. 2025)

The Court went on to impose the highest sanction, a three-thousand-dollar ($3,000) fine, and remove *pro hac vice* privilege, on the attorney who primarily authored the original submission and requested the AI tool: "add to this Motion in Limine Federal Case law from Wyoming setting forth requirements for motions in limine; add more case law regarding motions in limine; Add a paragraph to this motion in limine that evidence or commentary regarding an

6

improperly discarded cigarette starting the fire must be precluded because there is no actual evidence of this, and that amounts to an impermissible stacking of inferences and pure speculation. Include case law from federal court in Wyoming to support exclusion of this type of evidence; [and] Similar requests to add more case law." *Id.* at 494, 497. The Court took into account the "number of hallucinated case in the filing compared to real cases…[the filer's] apparent access to legal research resources [(tools from a prominent national firm)]…[and] the fact the attorneys have been on notice of generative AI's issue in hallucinating cases for quite some time…" *Id.* 498.

Similarly, in *Ramirez v. Humala*, counsel, moving for a pre-motion conference in advance of an anticipated motion to dismiss, filed a response with eight cases, of which *half* were fake or hallucinated. No. 24-CV-242 (RPK) (JAM), 2025 U.S. Dist. LEXIS 91124 (E.D.N.Y. May 13, 2025). In that matter, the attorney conceded that the cases did not exist and that they were generated by "AI-based research assistants." *Id.* at 2. The court went on to determine that at filing attorney "acted with subjective bad faith, as required for the imposition of *sua sponte* sanctions under Rule 11." *Id.* at 3, 4 citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). The court went on to state, "[i]n similar cases where sanctions have been imposed on attorneys for the submission of nonexistent, AI-generated cases, monetary sanctions have ranged from $1,000 to $5,000. *See*, e.g., *Mata*, 678 F. Supp. 3d at 466 ($5,000 sanction); *Gauthier*, 2024 U.S. Dist. LEXIS 214029, 2024 WL 4882651, at *3 ($2,000 sanction); *Wadsworth*, 348 F.R.D. at 498 ($3,000 sanction for the most culpable attorney; $1,000 sanctions each for two less culpable attorneys); *Dehghani*, 2025 U.S. Dist. LEXIS 63641, 2025 WL 988009, at *5 ($1,500 sanction); *Nguyen*, 2025 U.S. Dist. LEXIS 37125, 2025 WL 679024, at *1 ($1,000 sanction); *Benjamin*, 2025 U.S. Dist. LEXIS 78895, 2025 WL 1195925, at *9 ($1,000

sanction)." *Ramirez v. Humala*, No. 24-CV-242 (RPK) (JAM), 2025 U.S. Dist. LEXIS 91124 at 4 (E.D.N.Y. May 13, 2025). The Court imposed a $1,000.00 fine on the filing attorney. *Id.* at 5.

Additionally, in *United States v. Hayes* attorney for the defense, an assistant public defender, "submitted a fictitious or non-existent case and quotations" in his submission on a motion to unseal. 763 F. Supp. 3d 1054 at 1064 (E.D. Cal. 2025). The Court went on to state, "[the attorney's] inaccurate and misleading statements were not inadvertent as claimed, but knowing and made in bad faith. Despite being provided multiple opportunities to candidly acknowledge and correct his errors as required under his duty of candor to the court, [counsel] unfortunately failed to do so." *Id.* Counsel relied on a fake or hallucinated case as central to his entire argument before the Court. *Id.* at 1065. When questioned on the "hallucinated" case, the attorney was not forthcoming and stated he "never" used AI to draft any of the motions." *Id* at 1065. The Court went on to find that the "[attorney] made knowing and willful misrepresentations with the intent to mislead the Court, which violated the standards of professional conduct, including the duty of candor to the court, and demonstrates bad faith. [Counsel's] first opportunity to candidly acknowledge and correct the fictitious case and quotation was in his written reply filed in response to the government's opposition that directly raised the fictitious case and quotation. But instead of candidly acknowledging and correcting his errors…[he described the fictious case] as inadvertent citation error." *Id*. at 1067. The Court went on to impose $1,500 in monetary sanctions on the attorney. *Id.* at 1073.

Finally, in *Benjamin v. Costco Wholesale Corp.*, cited by this Honorable Court in its July 16, 2025 Order, counsel in that case filed a reply which contained "five cases identified in the Order to Show Cause [as] fake." *Benjamin v. Costco Wholesale Corp.*, No. 2:24-cv-7399 (LGD), 2025 U.S. Dist. LEXIS 78895 at 9 (E.D.N.Y. Apr. 24, 2025). The attorney was forthcoming on

8

having used AI to draft the Reply stating she "had very little time to draft [it]." *Id* at 9. The attorney contended that she "used AI ('ChatOn') to draft the reply but failed to review the Reply before filing it." *Id.* at 9. Plaintiff's counsel then took the work produced by ChatOn and pasted it into the sworn affirmation she had created. *Id*. at 11. In imposing sanctions, the Court found that counsel cited cases she knew she had not read. *Id.* at 16. The Court went on to state, "she made no inquiry at all into the validity of the arguments she was making to the Court." *Id* at 17.

The Court in *Benjamin* found that the attorney acted similarly as in *Mata*, "where a court in the Southern District of New York found that an attorney acted in subjective bad faith by "not reading a single case cited in [his affirmation] and taking no other steps on his own to check whether any aspect of the assertions of law were warranted by existing law." *Id*. at 22 quoting *Mata*, 678 F. Supp 3d at 464. As such, the Court went on to impose a monetary sanction of $1,000 on the attorney.

### B. Distinguishing Features of Counsel's Conduct in this Instance

Counsel's conduct in this matter is markedly distinct from the above precedents. Unlike *Wadsworth*, where reliance on AI produced a majority of fake cases, Counsel here cited to authorities 226 times in which each instance not single fake authority was produced. Indeed, Counsel has attested to the fact that he in fact conducted the legal research, and spent hours of time towards the filing of these submissions – unlike the forementioned cases wherein the courts imposed monetary sanctions for "hallucination" or fake cases and in some instances the attorneys were reluctant to expose their mistakes. E.g., *United States v. Hayes*, 763 F. Supp. 3d 1054 (E.D. Cal. 2025). The use of Microsoft Copilot was limited to editing assistance, not primary research or drafting, and counsel reiterates he did not act in bad faith or with intent to deceive the Court or Defendants. Counsel states embarrassingly that he did however, fall short. (Contrast with *Hayes*

and *Ramirez* (¶¶ 15, 16, Exhibit A). In *Benjamin*, counsel failed to review AI output, whereas here, the errors arose from inadequate verification after Copilot's alterations, a mistake promptly acknowledged and corrected (¶¶ 7-14, Exhibit A). Furthermore, Counsel's immediate end of AI use and planned CLE courses reflect proactive remediation, this good-faith response, supported by a decade-long unblemished record (¶ 1, Exhibit A), distinguishes this matter, warranting leniency over severe sanctions.

### IV. Suggested Sanction

It is well settled that a district court may use its inherent powers to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Phinney v. Paulshock</u>, 181 F.R.D. 185 at 197 (D.N.H. 1998) citing *Chambers*, 501 U.S. at 45-46; *see Whitney Bros. Co.*, 60 F.3d at 13. The court may exercise its inherent powers to sanction a party for committing a fraud on the court where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Phinney v. Paulshock*, 181 F.R.D. 185 at 197 (D.N.H. 1998) citing *Aoude*, 892 F.2d at 1117-1118. "Imposing sanctions against counsel is a serious matter. Hence, when a federal court deems such a course appropriate, it must make specific findings in support of its order. *See*, e.g., *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1427 n.5 (1st Cir. 1992); *Foster v. Mydas Assocs.*, 943 F.2d 139, 142-43 (1st Cir. 1991). Such findings serve a variety of salutary purposes; among other things, they enable a reviewing court to determine whether the sanctions imposed have sufficient grounding in law and in fact. *See Foster*, 943 F.2d at 141-42." *Williams v. United States (In re Williams)*, 156 F.3d 86 at 89 (1st Cir. 1998).

Sanctions are not limited to monetary imposts. "Words alone may suffice if they are expressly identified as a reprimand." *Id.* at 92 citing e.g., *Dawson v. United States*, 68 F.3d 886, 894 (5th Cir. 1995) (reviewing an order expressly imposing a reprimand and requiring the attorney to attend an ethics course).

In light of the above, Counsel respectfully proposes the following: Counsel is to undertake a minimum of four (4) continuing legal education (CLE) courses focusing on topics such as the use of AI in legal practice, Legal Ethics, and Federal Practice, or a combination thereof. These courses will be completed within the next sixty (60) days. Upon completion, Counsel will submit a signed declaration to the Court detailing the course titles, the providers of the courses, the completion dates, and a brief summary (one to two paragraphs) of the key lessons learned from each course.

V.    **Conclusion**

Counsel regrets these unintentional errors and reaffirms his commitment to candor. The inaccuracies resulted from an editing tool's alterations during post draft polishing, not hallucination 'fake cases' or bad faith. Distinguished from the other precedential cases, and with remedial actions in place, Plaintiff respectfully requests the Court accept Counsel's course of action and discharge the Order to Show Cause.

Respectfully submitted,

VITA LAW OFFICES, P.C.,
Plaintiff,
By its attorney,

*/s/ Christopher M. Cervantes*
Christopher M. Cervantes, BBO# 694813
Cervantes Law, P.C.
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 997-4435
Email: CMC@CCervantesLaw.com

Dated: July 18, 2025

## CERTIFICATE OF SERVICE

I certify that on July 18, 2025, this document was filed through the CM/ECF system, which will send notification to all counsel of record, and paper copies will be sent to non-registered participants.

*/s/ Christopher M. Cervantes*