**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

VITA LAW OFFICES, P.C.,

              *Plaintiff,*

    vs.

LOCKRIDGE GRINDAL NAUEN P.L.L.P
and HEIDI M. SILTON, ESQ.

              *Defendants*.

C.A. No. 25-cv-23576

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8(a)(2) AND**
**12(b)(6) AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.    Introduction ...................................................................................................................... 1

II.   Standard of review ........................................................................................................... 2

III.  Background ........................................................................................................................ 2

    A.   LGN co-led the *Salmon* Litigation before this Court. ............................................. 2

    B.   Only after settlement did LGN learn of Vita's purported
       referral agreement. .................................................................................................. 3

    C.   Vita sued LGN seeking exorbitant sums for the alleged violation of
       a non-existent referral agreement. ........................................................................... 3

       1.   This is the fourth Court to address this dispute. ............................................. 4

       2.   The Court dismissed Vita's original complaint as a shotgun
          pleading. ........................................................................................................ 5

       3.   Vita's amended complaint does not cure its pleadings' flaws. ........................ 5

IV.   The Court should dismiss Vita's amended complaint for violations
    of Rule 8(a)(2) and failure to withstand Rule 12(b)(6). ..................................................... 7

    A.   Counts I and IV violate the shotgun pleading rule and, therefore,
       Rule 8. ..................................................................................................................... 7

    B.   The Court should dismiss Counts II, III, and VII because Vita fails
       to plead its quasi-contract claims in the alternative to its breach of
       contract claim. ......................................................................................................... 7

    C.   Vita still does not allege that it entered into an enforceable oral
       referral agreement with LGN, dooming its entire amended complaint. .................... 9

       1.   The Court should dismiss Counts I through V and VII through IX
          must because Vita still does not plausibly allege that Mr. Isquith
          was LGN's "agent." ....................................................................................... 9

       2.   The Court should dismiss Counts I and IV through VII because
          an oral agreement between Vita and LGN, if it existed, would be
          unenforceable. ............................................................................................ 12

    D.   Vita's amended complaint fails for a myriad of additional reasons. .......................... 15

       1.   The Court should dismiss Counts II and III because Vita cannot
          recover in equity where it violated the Rules of Professional
          Responsibility. ............................................................................................. 15

       2.   The Court should dismiss Count IV because Vita's contradictory
          allegations undermine its fraudulent misrepresentation claim. ..................... 16

       3.   The Court should dismiss Count V because Vita still fails to plead
          a cognizable violation of Massachusetts' consumer protection law. .............. 17

       4.   The Court should dismiss Count VI because it asserts a claim not
          cognizable under relevant law. ..................................................................... 19

i

5. The Court should dismiss Count VII because Vita has failed to plausibly allege an agreement or the value of its purported services. ........................... 19

**V.   Conclusion ....................................................................................................................... 20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*,
 43 So. 3d 887 (Fla. Dist. Ct. App 2010) ................................................................................ 20

*Architectural Ingenieria Siglo XXI, LLC v. Dominion Republic*,
 No. 13-cv-20544, 2020 WL 6808856 (S.D. Fla. Apr. 16, 2020) ............................................... 16

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
 No. 11-cv-10230, 2018 WL 11026335 (D. Mass. June 28, 2018) ............................................ 15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................ 2, 13

*Autographic Reg. Co. v. Phillip Hano Co.*,
 198 F.2d 208 (1st Cir. 1952) ................................................................................................ 13, 19

*Barrett Assocs. v. Aronson*,
 190 N.E.2d 867 (Mass. 1963) .................................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................................... 2

*Blackhawk Yachting, LLC v. Tognum Am., Inc.*,
 No. 12-cv-14208, 2013 WL 12199875 (S.D. Fla. Apr. 23, 2013) ............................................ 19

*Chandris, S.A. v. Yanakakis*,
 668 So. 2d 180 (Fla. 1995) ....................................................................................................... 14

*Chaparro v. Carnival Corp.*,
 693 F.3d 1333 (11th Cir. 2012) .............................................................................................. 2, 11

*Christensen v. Eggen*,
 577 N.W.2d 221 (Minn. 1998) .................................................................................................. 14

*Church of the Nativity of Our Lord v. WatPro, Inc.*,
 491 N.W.2d 1 (Minn. 1992) ...................................................................................................... 10

*Constr. Mortg. Invs. Co. v. Westland Title Servs., Inc.*,
 No. 91-cv-299, 1991 WL 137699 (Minn. Ct. App. July 30, 1991) ........................................... 11

*Daake v. Decks N Such Marine, Inc.*,
 201 So.2d 179 (Fla. 1st Dist. Ct. App. 2016) ............................................................................. 9

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
 188 F. Supp. 2d 115, 119 (D. Mass. 2002) ............................................................................... 13

*Debnam v. FedEx Home Delivery*,
 766 F.3d 93 (1st Cir. 2014) ...................................................................................................... 17

*Diamond Crystal Brands, Inc. v. Backleaf, LLC*,
 803 N.E.2d 744 (Mass. App. Ct. 2004) ..................................................................................... 18

*Doral Collision Ctr., Inc. v. Daimler Trust*,
  341 So. 3d 424 (Fla. 2d Dist. Ct. App. 2022) ................................................................. 9

*Ertsgaard v. Bowen*,
  237 N.W. 1 (Minn. 1931)............................................................................................... 19

*Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Tr.*,
  912 N.W.2d 652 (Minn. 2018)....................................................................................... 20

*Flaherty v. Royal Caribbean Cruises, Ltd.*,
  No. 15-cv-22295, 2015 WL 8227674 (S.D. Fla. Dec. 7, 2015)...................................... 7

*Grenon v. Bradshaw*,
  No. 21-cv-81277, 2022 WL 493690 (S.D. Fla. Jan. 24, 2022)....................................... 9

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ................................................................................ 2, 18

*Hagedorn v. Aid Ass'n for Lutherans*,
  211 N.W.2d 154 (Minn. 1973)....................................................................................... 11

*Hagle v. Royal Caribbean Cruises Ltd.*,
  No. 22-cv-23186, 2023 WL 3571292 (S.D. Fla. May 2, 2023)...................................... 7

*Hernandez v. Integon Nat'l Ins. Co.*,
  Case No. 20-cv-23371, 2020 WL 6581610 (S.D. Fla. Nov. 10, 2020)........................ 8, 9

*Hockemeyer v. Pooler*,
  130 N.W.2d 367 (Minn. 1964)....................................................................................... 11

*Hudson v. Mass. Prop. Ins. Underwriting Ass'n*,
  436 N.E.2d 155 (Mass. 1982)........................................................................................ 11

*In re Access Cardiosystems, Inc.*,
  404 B.R. 593 (Bankr. D. Mass. 2009) ........................................................................... 17

*In re Intuniv Antitrust Litig.*,
  496 F. Supp. 3d 639 (D. Mass. 2020) ............................................................................ 19

*Jenny B. Realty, LLC v. Danielson, LLC*,
  456 F. Supp. 3d 307 (D. Mass. 2020) ...................................................................... 10, 14

*JI-EE Indus. Co. v. Paragon Metals, Inc.*,
  No. 09-cv-81590, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010)................................... 9

*Jordan v. Miami-Dade Cnty.*,
  439 F. Supp. 2d 1237 (S.D. Fla. 2006) ........................................................................... 2

*Joseph v. Dubbin*,
  No. 06-cv-20464, 2006 WL 8433470 (S.D. Fla. Dec. 28, 2006)................................... 14

*Joseph v. Dubbin,*
  No. 06-cv- 20464, 2006 WL 8433517 (S.D. Fla. July 14, 2006) .................................. 15

*Jurek v. Thompson*,
  241 N.W.2d 788 (Minn. 1976)....................................................................................... 11

*Kelley v. Schlumberger Tech. Corp.*,
  No. 85-cv-4794, 1987 WL 9908 (D. Mass. Apr. 13, 1987) ...................................................... 13

*Konair US, LLC v. DGI II, LLC*,
  No. 19-cv-5728, 2022 WL 1020005 (N.D. Ga. Feb. 28, 2022) .................................................... 8

*Kovtan v. Frederiksen*,
  449 So.2d 1 (Fla. 2d Dist. Ct. App. 1984) ................................................................ 8, 9

*KPS Assocs., Inc. v. Designs By FMC, Inc.*,
  318 F.3d 1 (2003) ........................................................................................... 17

*Law Offices of David Efron v. Matthews & Fullmer Law Firm*,
  782 F.3d 46 (1st Cir. 2015) ................................................................................ 18

*Linkage Corp. v. Trs. of Bos. Univ.*,
  679 N.E.2d 191 (Mass. 1997) .............................................................................. 17

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) .......................................................................... 8, 9

*Manning v. Zuckerman*,
  444 N.E.2d. 1262 (Mass. 1983) ............................................................................ 17

*Marcus v. Garland, Samuel & Loeb, P.C.*,
  441 F. Supp. 2d 1227 (S.D. Fla. 2006) ................................................................. 15, 16

*Martens v. Minn. Mining & Mfg. Co.*,
  616 N.W.2d 732 (Minn. 2000) ............................................................................. 16

*McLaughlin Transp. Sys., Inc. v. Rubinstein*,
  390 F. Supp. 2d 50 (D. Mass. 2005) ...................................................................... 11

*Mechs. Nat'l Bank of Worcester v. Killeen*,
  384 N.E.2d 1231 (Mass. 1979) ............................................................................ 17

*Med. & Chiro. Clinic, Inc. v. Oppenheim*,
  No. 16-cv-1477, 2018 WL 3707836 (M.D. Fla. Aug. 3, 2018) ................................................. 2

*Merch. One, Inc. v. TLO, Inc.*,
  No. 19-cv-23719, 2020 WL 248608 (S.D. Fla. Jan. 16, 2020) ................................................ 8

*Merchia v. Femmino*,
  2019 WL 1461488 (Mass. Land Ct. Mar. 29, 2019) ......................................................... 12

*Michalski v. Bank of Am. Ariz.*,
  66 F.3d 993 (8th Cir. 1995) .............................................................................. 19

*Monahan Prods. LLC v. Sam's East, Inc.*,
  463 F. Supp. 3d 128 (D. Mass. 2020) .................................................................. 18, 19

*New Millenium Consulting, Inc. v. UnitedHealthCare Servs., Inc.*,
  695 F.3d 854 (8th Cir. 2012) ............................................................................. 11

*Noon v. Carnival Corp.*,
  No. 18-cv-32181, 2019 WL 2254924 (S.D. Fla. Feb. 1, 2019) ............................................... 7

v

*Normandin v. Eastland Partners, Inc.*,
862 N.E.2d 402 (Mass. App. Ct. 2007) ................................................................................ 11

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ............................................................................................... 2

*Rick v. Profit Mgmt. Assocs., Inc.*,
241 F. Supp. 3d 215 (D. Mass. 2017) ................................................................................. 16

*Rivers v. Skate Warehouse, LLC*,
No. 12-cv-9946, 2013 WL 12128800 (C.D. Cal. Apr. 15, 2013) ........................................ 8

*Robinson v. SunTrust Mortg., Inc.*,
785 F. App'x 671 (11th Cir. 2019) ..................................................................................... 16

*Rodi v. S. New Engl. Sch. Law*,
532 F.3d 11 (1st Cir. 2008) ................................................................................................. 17

*Sabel v. Mead Johnson & Co.*,
737 F. Supp. 135 (D. Mass. 1990) ...................................................................................... 11

*Soderberg & Vail, LLC v. Meshbesher & Spence, Ltd.*,
Nos. 15-cv-88 & 15-cv-358, 2016 WL 22251 (Minn. Ct. App. Jan. 4, 2016) ..................... 16, 19

*St. John's Holding, LLC v. Two Electronics, LLC*,
2016 WL 6191911 (Mass. Land Ct. Oct. 24, 2016) ............................................................ 12

*Stathis v. Nat'l Car Rental Sys., Inc.*,
109 F. Supp. 2d 55 (D. Mass. 2000) ................................................................................... 10

*Sterling Capital Advs. Inc. v. Herzog*,
575 N.W.2d 121 (Minn. 1998) ........................................................................................... 8, 9

*Suzuki v. Abiomed, Inc.*,
253 F. Supp. 3d 342 (D. Mass. 2017) ................................................................................... 9

*Telford v. Iron World Mfg., LLC*,
680 F. Supp. 2d 337 (D. Mass. 2010) ................................................................................. 12

*Tetrault v. Mahoney, Hawkes & Goldings*,
681 N.E.2d 1189 (Mass. 1997) .......................................................................................... 18

*Theos & Sons, Inc. v. Mack Trucks, Inc.*,
729 N.E.2d 1113 (Mass. 2000) ..................................................................................... 10, 11

*Truck Crane Serv. Co. v. Barr-Nelson, Inc.*,
329 N.W.2d 824 (Minn. 1983) ........................................................................................... 11

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ............................................................................................................ 10

*White v. Boucher*,
322 N.W.2d 560 (Minn. 1982) ........................................................................................... 11

*Whitinsville Plaza, Inc. v. Kotseas*,
390 N.E.2d 243 (Mass. 1979) ............................................................................................ 18

*William H. McCoy Petroleum Fuels, Inc. v. Pool*
 1989 WL 7592 (Minn. Ct. App. Feb. 7, 1989) ..................................................................... 11, 12

*Zarum v. Brass Mill Materials Corp.*,
 134 N.E.2d 141 (Mass. 1956) .............................................................................................. 8, 9

## Statutes

Mass. Gen. L. ch. 93A § 2 .......................................................................................................... 17

## Rules

Fed. R. Civ. P. 8 ............................................................................................................... 1, 6, 7, 8

Fed. R. Civ. P. 12 ............................................................................................................... 1, 6, 7

Fla. Bar R. 4-1.5 ..................................................................................................................... 14

Minn. R. Prof. Conduct 1.5 .............................................................................................. 14, 15, 16

N.Y. R. Prof. Conduct 1.5 ...................................................................................................... 16

## I.      INTRODUCTION

The Court dismissed Plaintiff Vita Law Offices P.C.'s original complaint. Vita's amended complaint suffers from the same legal flaws.

Vita's original complaint was a shotgun pleading. Its amended complaint remains so. While Vita superficially complied with the Court's directive not to incorporate allegations of all preceding counts into each successive count, it perpetuates the very ills the Court gave Vita the opportunity to cure. Instead of incorporating all prior paragraphs by reference, Vita expressly includes allegations of an express contract into quasi-contract claims—resulting in its failure to plausibly plead alternative causes of action.

Vita's amended complaint repeats the substantive failings of its original complaint, too. Vita asks this Court to award it a $660,000 referral fee in the *Salmon* Litigation, *Wood Mountain Fish LLC v. Mowi ASA,* No. 19-cv-22128 (S.D. Fla.), claiming that it entered into an oral referral agreement with Lockridge Grindal Nauen PLLP through its partner, Heidi M. Silton (collectively, "LGN"), a firm with whom it never corresponded prior to *Salmon*'s resolution. Two legal flaws doom its case. First, Vita alleges that Fred Isquith, Sr. was LGN's "agent." But beyond conclusory assertions, Vita has not alleged—it cannot allege—Mr. Isquith had actual or apparent authority to bind LGN. Second, even if Vita could allege an agreement, that agreement is unenforceable as Vita breached its ethical obligations to enter into only *written* referral agreements, and to first obtain its clients' written consent. One or both failings infect every claim in Vita's amended complaint. The Court should dismiss the entire amended complaint on this basis alone.

Vita's amended complaint also contains many other legal errors that doom its claims. Its promissory estoppel and unjust enrichment claims rest on an unethical oral referral agreement. Its fraudulent misrepresentations claim is internally contradictory. It fails to satisfy the statutory elements of Massachusetts' consumer protection law. It asserts a claim unavailable under applicable law. It even fails to plausibly allege a quantum meruit claim.

The Court afforded Vita a chance to cure the errors in its original complaint. It failed. It simply does not have a cognizable claim for an alleged breach of a supposed oral agreement that is unenforceable. Vita added vitriol and legal argument to its previously threadbare and deficient allegations, but this does not satisfy the pleading standard. The Court should dismiss Vita's amended complaint, this time with prejudice.

1

## II.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, Vita must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Its complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. The allegations must be sufficient "to raise a right to relief above the speculative level[.]"[1] *Twombly*, 550 U.S. at 555.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint" is not absolute. *Iqbal*, 556 U.S. at 678. It is "inapplicable to legal conclusions," mere "labels and conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "conclusory statements." *Id.* And it does not apply to a plaintiff's mischaracterizations of unambiguous statements in documents attached or incorporated by reference. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). A complaint, like Vita's, which provides only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.      BACKGROUND

### A.      LGN co-led the *Salmon* Litigation before this Court.

After this Court appointed Mr. Isquith as interim lead counsel, *see* Order, *Wood Mountain Fish LLC v. Mowi ASA*, No. 19-cv-22128 (S.D. Fla., entered June 20, 2019), ECF No. 24, Mr. Isquith sought to add LGN as interim co-lead counsel.[2] *See* Am. Compl. ¶ 20, ECF No. 62. The Court granted the motion and LGN co-led the case through "extensive discovery and motion practice," to a $33 million settlement. *Id.* ¶¶ 18, 24. After settlement approval, LGN and Mr. Isquith

---

[1] The Court may consider not only a complaint's allegations, but also documents "directly referred to in the [c]omplaint." *Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006). Vita's amended complaint incorporates the same documents LGN previously identified in its original complaint. *See* Decl. Stephen J. Teti, ECF No. 51-1.

[2] Vita pleads this motion "required [Vita]'s consent." Am. Compl. ¶ 20. It is wrong as a matter of law. Even before class certification, "the duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs," let alone the financial aspirations of a plaintiff's individual counsel. *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982); *Med. & Chiro. Clinic, Inc. v. Oppenheim*, No. 16-cv-1477, 2018 WL 3707836, at *9 (M.D. Fla. Aug. 3, 2018).

"jointly determined the allocation of attorneys' fees" according to contributing firms' lodestar and expenses. *Id.* ¶ 27; *id.* Ex. D at 2 n.2.

**B.      Only after settlement did LGN learn of Vita's purported referral agreement.**

"LGN and Vita never had any communications or dealings" before the *Salmon* litigation ended. Am. Compl. Ex. D at 2 (Letter from H. Silton to C. Cervantes (Aug. 15, 2024)), ECF No. 62-2. Their first contact was in April 2023, when Ms. Silton, on behalf of class counsel, advised Vita of its lodestar fee award. *See* Teti Decl., Ex. 1 (Email from H. Silton to R. Vita (Apr. 5, 2023)), ECF No. 51-2; *see* Am. Compl. ¶ 27 (incorporating by reference). Vita "immediately objected," claiming it was owed a referral fee. *Id.* ¶ 28.

As confirmed by Vita's account of the facts, this was the first email LGN received from Vita, and the first time LGN and Vita had ever communicated. Am. Compl. ¶¶ 17–26 (alleging no communications prior to April 2023); Teti Decl. Ex. 3 (Email from H. Silton to R. Vita (Apr. 6, 2023)), ECF No. 51-4; *see* Am. Compl. ¶ 29 (incorporating by reference). So it was the first time Vita discussed a supposed referral agreement with LGN—the first time *anyone* had. *See* Am. Compl. Ex. D at 2–3. Needless to say, LGN was surprised: the firm was "unaware of the referral agreement [Vita] reference[d]" and, despite "an exhaustive search" of its records, found "no documentation that refers to the arrangement . . . written, oral, or otherwise." Teti Decl. Ex. 3. Ms. Silton asked Vita to forward "whatever documents, emails or other communications [Vita] ha[d] that set out" the purported agreement. *Id.*

That was the first of LGN's many requests that Vita support its claim of an agreement. *See* Am. Compl. Ex. D at 3. In response, Vita castigated LGN's good faith attempts to resolve the confusion: "You . . . seem to be reliant and stuck on the fact that there is no signed written document styled referral fee agreement between [LGN] and [Vita]*." See* Teti Decl. Ex. 4 at 1 (Letter from R. Vita to H. Silton (May 24, 2023)), ECF No. 51-5. Despite many opportunities to do so, Vita has offered no parol evidence, such as emails or a retainer agreement with a client.

**C.      Vita sued LGN seeking exorbitant sums for the alleged violation of a non-existent referral agreement.**

The parties mediated Vita's insistence that it had a referral agreement with LGN. Am. Compl. ¶ 36. Vita eventually sued, seeking $660,000 in contract damages. *Id.* ¶ 37.

That number requires context. Vita put in less than a day's worth of work on *Salmon*. *See* Heidi Silton Decl. in Support of Mot. Transfer ¶ 16 (documenting Vita's 22.4 hours vs. LGN's 7,400 hours). Much of that time—spent securing Vita's second client—was necessary only due to

the inadequacy of its earlier efforts. *See* Compl. ¶¶ 22–23. Vita's eventual second client represented consumers in 1 of 34 participating states, just 3% of the settling class. *See id.* ¶ 23; Final Approval Order ¶ 4, *Wood Mtn.*, No. 19-cv-22128 (S.D. Fla., Feb. 27, 2023), ECF No. 352. A $660,000 fee for a day's work covering a sliver of the class amounts to a billing rate of $29,464.29 per hour.[3]

### 1.      This is the fourth Court to address this dispute.

This Court expressly "retain[ed] continuing jurisdiction over . . . any suit . . . relating to the award of fees and expenses and any allocation thereof." Final Approval Order ¶ 24. Yet Vita first sued LGN in Massachusetts federal court. *See* Compl., *Vita Law Offices, P.C. v. Lockridge Grindal Nauen PLLP* (*Vita I*), No. 25-cv-11155 (D. Mass., filed Apr. 28, 2025), ECF No. 1. Vita did not serve LGN. Weeks later, it announced its intention to refile in state court after "recently" discovering that LGN elevated Stephen Teti, a Massachusetts employee, to partner.[4] *See* Notice of Dismissal, *Vita I*, No. 25-cv-11155 (D. Mass., filed May 19, 2025), ECF No. 4. Vita speculated that "if" Mr. Teti was an equity partner, the federal court lacked diversity jurisdiction.[5] *Id.*

LGN's counsel phoned Vita's immediately to advise that LGN had no equity partners in Massachusetts and caution—as it had many times, *see, e.g.*, Am. Compl. Ex. D at 3–4—that any dispute belonged before this Court. *See* Defs.' Transfer Mot. 6, ECF No. 7. Yet immediately after the call, Vita refiled in Massachusetts state court. *See* Compl., *Vita Law Offices, P.C. v. Lockridge Grindal Nauen PLLP* (*Vita II*), No. 2584-cv-1365 (Mass Super. Ct., filed May 19, 2025).

LGN removed to federal court, *see* Notice of Removal, *Vita Law Offices P.C. v. Lockridge Grindal Nauen PLLP* (*Vita III*), No. 25-cv-11518 (D. Mass., filed May 28, 2025), ECF No. 1; and moved to transfer to this Court, *see* Defs.' Mot. Transfer, *Vita III*, ECF No. 6. The *Vita III* court

---

[3] Actually, it would be much more. Vita received 15% of the fees apportioned to Mr. Isquith and his former firm. Am. Compl. ¶ 29. Upon information and belief, Vita's cut of those fees is around $262,000. Combined, then, Vita seeks what amounts to around $41,160.71 an hour.

[4] There was nothing recent—or secret—about Mr. Teti's status. LGN listed him as a partner on LGN's webpage as of January 2025. *See* Decl. Stephen J. Teti in support of Mot. Transfer ¶¶ 3–4. He introduced himself as a partner at mediation. *Id.* ¶ 8. A February 2025 press release featured his elevation to partnership. *See* Press Release, LGN, *New Partner Feature: Stephen J. Teti* (Feb. 26, 2025), https://www.locklaw.com/new-partner-feature-stephen-j-teti/. Vita has not explained why—if it did its due diligence—it did not discover he was a partner until mid-May.

[5] Although Vita acknowledged in its dismissal that only an equity partner's domicile impacts the diversity jurisdiction, it subsequently walked away from that admission to misstate the law in support of its remand bid. *See* Pl.'s Resp. to Jurisdictional Order to Show Cause, ECF No. 20.

found diversity jurisdiction existed, Order, ECF No. 22 (holding "[f]or substantially the reasons set forth by Defendants" "there is complete diversity between Plaintiff and Defendants"), and transferred the case, Transfer Order, ECF No. 37.

### 2. The Court dismissed Vita's original complaint as a shotgun pleading.

Vita's threadbare original complaint failed to comply with Federal Rule of Civil Procedure 8. It pleaded cumulative counts, failed to identify which claims it levied against which Defendant, and failed to separate distinct claims into separate counts. *See* Defs.' Initial Dismissal Br. 19–20, ECF No. 51. It also failed to withstand Rule 12 scrutiny. It presumed Massachusetts law applied to each claim when it applied to just two. *See* Defs.' Initial Reply 3–4, ECF No. 59. Every cause of action hinged on an unsupported claim that Mr. Isquith was LGN's "agent." *See* Defs.' Initial Dismissal Br. 8–11. It pleaded the existence of an unenforceable oral referral agreement that violated attorney ethics rules. *See id.* 11–14. And its threadbare causes of actions suffered from numerous legal failings. *See id.* at 14–19.

On December 22, 2025, the Court dismissed Vita's original complaint as a shotgun pleading, finding that Vita committed the "mortal sin" of pleading cumulative counts and accomplished the "relatively rare sin of asserting multiple claims against multiple defendants without specifying . . . which of the defendants the claim is brought against." *See* Dismissal Order, ECF No. 61 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)). The Court admonished Vita to "cure the Complaint by December 31, 2025," or face "a final Order of dismissal." *Id.* at 4.

### 3. Vita's amended complaint does not cure its pleadings' flaws.

Vita's amended complaint got longer, but not any better. Vita superficially heeded the Court's instruction to cure its shotgun pleading deficiencies—for example, by identifying the Defendants against whom Vita asserts each cause of action. But Counts I and IV improperly assert multiple claims. *See infra* Section IV.A. And though the Counts no longer "adopt[] the allegations of all preceding counts," Dismissal Order at 3, several now affirmatively (and fatally) incorporate allegations of an express agreement into quasi-contract claims, *compare* Am. Compl. ¶¶ 19, 20, 37 *with id.* ¶¶ 43, 48, 72. This perpetuates the same flaw underpinning the Court's instruction to cure Vita's shotgun pleading. *See infra* Section IV.C.

5

Almost all of its causes of action still depend on the explicit or implicit allegation that Mr. Isquith was LGN's agent—though Vita has taken pains to hide this from the Court.[6] *See infra* Section IV.C.1. *See* Am. Compl. ¶¶ 17–23. The agreement it alleges, if it did exist, is still unenforceable. *See infra* Section IV.C.2. And Vita has not cured the myriad legal flaws in its subsidiary causes of action. *See infra* Section IV.D.

Instead, Vita now commits "the venial sin" of bulking up its amended complaint with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Dismissal Order 3 (quoting *Weiland*, 792 F.3d at 1321–23); *see, e.g.*, Am. Compl. ¶¶ 30–34 (including inflammatory allegations in an attempt to bias the Court). The bulk of its new matter is legal argument. First, while the Federal Rules require "a short and plain statement of the grounds for the court's jurisdiction," Fed. R. Civ. P. 8(a)(2), Vita devotes its "Jurisdiction and Venue" section to complaining that it believes this case belongs in Massachusetts. *Id.* ¶¶ 8–13.

Second, while Vita now acknowledges that Massachusetts' choice-of-law rules determine the applicable substantive law, it still argues Massachusetts' substantive law applies too. *See* Am. Compl. ¶¶ 11 ("[T]he contract at issue was formed in Massachusetts upon receipt of Defendants' acceptance."), 19 (arguing that parties "form[ed] a binding contract in Massachusetts" when Vita "received and relied upon [LGN's alleged] acceptance"), 69 (arguing "[u]nder Massachusetts law, the referral agreement included an implied covenant of good faith and fair dealing"), 79 (arguing the parties reached "an implied agreement under Massachusetts law").

Third, Vita tries to mitigate its admitted violation of ethical rules. Vita now argues that this does not matter that it failed to reduce its supposed agreement to writing or to obtain its clients'

---

[6] In Count III, for example, Vita switches to the passive voice to hide Mr. Isquith's involvement. *Compare* Orig. Compl. ¶ 38, ECF No. 1-3 ("Defendants, *through [Mr.] Isquith as their agent*, made a clear and definite promise to pay" (emphasis added)) *with* Am. Compl. ¶ 50 ("LGN, *through communications made and accepted* . . . made a clear and definite promise to pay." (emphasis added)). Communications made and accepted by whom? Presumably, Mr. Isquith, given that Vita and LGN never corresponded prior to April 2023. Count VIII simply excises a reference to Mr. Isquith. *Compare* Orig. Compl. ¶ 59 ("Through . . . communications *facilitated by [Mr. Isquith]*, Defendants manifested an intent to be bound" (emphasis added)) *with* Am. Compl. ¶ 78 ("Through their . . . communications, . . . LGN manifested an intent to be bound . . . ."). Yet Vita's amended complaint maintains a conclusory allegation that Mr. Isquith was "acting as interim lead counsel of the class *and as [LGN's] agent* with actual or apparent authority." *Id.* ¶ 39 (emphasis added). So even though Vita mostly excises the word "agent" from its amended complaint, the point remains: for most of its causes of action, Vita's allegations still depend upon Ms. Isquith having been LGN's agent. *See* Defs.' Initial Dismissal Br. at 8-11; *see also infra* Section IV.C.1.

consent because "the fees" were not "deducted" from its clients' "individual recoveries" (false), and the Court's oversight of the class-action settlement eliminated Vita's obligation to obtain client consent (wrong). Am. Compl. ¶¶ 25–26.

## IV.   THE COURT SHOULD DISMISS VITA'S AMENDED COMPLAINT FOR VIOLATIONS OF RULE 8(a)(2) AND FAILURE TO WITHSTAND RULE 12(b)(6).

To its amended complaint, Vita adds only defiance, inflammatory allegations, and argument. It adds nothing to overcome the fatal flaws of its original complaint. Vita's amended complaint fails, for the same reasons stated in LGN's initial motion to dismiss.

### A.   Counts I and IV violate the shotgun pleading rule and, therefore, Rule 8.

This Court ordered Vita to cure the defects or face dismissal with prejudice. *See* Dismissal Order ¶ 2, ECF No. 61. Shotgun flaws remain.

First, to comply with the shotgun pleading rules, a plaintiff must "separate his apparent and actual agency theories into two separate counts of vicarious liability." *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-cv-22295, 2015 WL 8227674, at *5 n.10 (S.D. Fla. Dec. 7, 2015). "Actual agency and apparent agency should be alleged in separate counts because it promotes clarity for two different theories of liability that require different elements." *Noon v. Carnival Corp.*, No. 18-cv-32181, 2019 WL 2254924, at *5 (S.D. Fla. Feb. 1, 2019). Yet Count I (breach of contract) hinges on an allegation that Mr. Isquith "act[ed] as . . . Defendants' agent with actual or apparent authority" in accepting a purported referral agreement on LGN's behalf. Am. Compl. ¶ 39.

Second, "[w]hile [a plaintiff] can travel under a theory of direct liability, vicarious liability, or both for a given claim, they are not the same cause of action. Rather, they are distinct theories of liability, and to assert both in one count is impermissible shotgun pleading." *Hagle v. Royal Caribbean Cruises Ltd.*, No. 22-cv-23186, 2023 WL 3571292, at *6 (S.D. Fla. May 2, 2023), *R&R adopted* 2023 WL 3568130 (S.D. Fla. May 19, 2023); *accord Noon*, 2019 WL 2254924, at *5 (condemning pleading that "conflated allegations of vicarious liability with direct negligence"). But in a single count, Count IV (fraudulent misrepresentation), Vita seeks to hold Ms. Silton *directly* liable and LGN *vicariously* liable for alleged misrepresentations. Am. Compl. ¶ 60.

### B.   The Court should dismiss Counts II, III, and VII because Vita fails to plead its quasi-contract claims in the alternative to its breach of contract claim.

When this Court instructed Vita to cure the defects in its original complaint, it expressly called out Vita's "mortal sin of containing multiple counts where each count adopts the allegations of all preceding counts." Dismissal Order at 3. This cumulative-count tactic is impermissible

because it yields a pleading in which "'each count is replete with factual allegations that could not possibly be material to that specific count.'" *Id.* (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). And where, as here, a plaintiff "attempts to plead certain claims in the alternative, such as breach of contract and unjust enrichment," it results in the self-defeating incorporation of contract allegations into quasi-contract causes of action. *Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 WL 248608, at *3 (S.D. Fla. Jan. 16, 2020).

Vita pretends to comply with the Dismissal Order. Each count in the amended complaint now specifically incorporates specific paragraphs. *See* Am. Compl. ¶¶ 38, 43, 48, 54, 61, 68, 72, 76, 83. But despite this superficial change, the amended complaint still suffers from the flaw the prohibition on cumulative counts seeks to prevent.

Vita purports to state claims for unjust enrichment (Count II), promissory estoppel (Count III), and quantum meruit (Count VII) as "alternative[s]" to its contract-based claims. *See* Am. Compl. ¶¶ 44, 49, 73. Into each, Vita incorporates paragraphs 19, 20, and 37. *See* Am. Compl. ¶¶ 43, 48, 72. Paragraph 19 alleges that LGN and Vita "form[ed] a binding contract[.]" *Id.* ¶ 19. Paragraph 20 claims that LGN "agreed to [the] terms" of the alleged "referral fee agreement." *Id.* ¶ 20. Paragraph 37 refers to an alleged "breach of contract" and to "referral fees" that "were contractually due to be paid." *Id.* ¶ 37. That is, the paragraphs supporting each of Vita's quasi-contract claims allege the existence of an actual contract.

A plaintiff may, of course, plead alternative causes of action, even if they are mutually exclusive or contradictory. *See* Fed. R. Civ. P. 8(d). But a plaintiff fails to plead claims in the alternative where, as here, the alternative cause of action expressly incorporates inconsistent allegations. *See e.g.*, *Hernandez v. Integon Nat'l Ins. Co.*, Case No. 20-cv-23371, 2020 WL 6581610, at *5 (S.D. Fla. Nov. 10, 2020) (finding a complaint "replete with contradictory allegations" failed to state a claim that was plausible on its face); *Konair US, LLC v. DGI II, LLC*, No. 19-cv-5728, 2022 WL 1020005, at *3 n.26 (N.D. Ga. Feb. 28, 2022) (collecting cases); *cf. Rivers v. Skate Warehouse, LLC*, No. 12-cv-9946, 2013 WL 12128800, at *12 n.66 (C.D. Cal. Apr. 15, 2013) (dismissing contract claim incorporating allegations undermining existence of contract).

"The law will not imply a contract where there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 134 N.E.2d 141, 143 (Mass. 1956). This is true under any possibly applicable law. *See Sterling Capital Advs. Inc. v. Herzog*, 575 N.W.2d 121, 126 (Minn. 1998); *Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d Dist. Ct. App.

8

1984). It is true for unjust enrichment claims. *See Doral Collision Ctr., Inc. v. Daimler Trust*, 341 So. 3d 424, 430 (Fla. 2d Dist. Ct. App. 2022); *Sterling*, 575 N.W.2d at 126–127; *Zarum*, 134 N.E.2d at 143. It is true for promissory estoppel claims. *See JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-cv-81590, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010); *Suzuki v. Abiomed, Inc.*, 253 F. Supp. 3d 342, 351 (D. Mass. 2017). And it is true for quantum meruit claims. *See Daake v. Decks N Such Marine, Inc.*, 201 So.2d 179, 181 (Fla. 1st Dist. Ct. App. 2016); *Sterling*, 575 N.W.2d at 126; *Suzuki*, 253 F. Supp. 3d at 351. Thus, Vita's express contract allegations—which it expressly incorporates into its quasi-contract claims—are fatal to its unjust enrichment, promissory estoppel, and quantum meruit theories.

Whether this is viewed as a violation of the prohibition against shotgun pleadings under Rule 8, *see Magluta*, 256 F.3d at 1284, or a failure to comprehensibly plead alternative claims under Rule 12, *Hernandez*, 2020 WL 6581610, at *5, Vita "has not properly plead[ed] that" its quasi-contract claims are "made in the alternative," so they should be dismissed. *Grenon v. Bradshaw*, No. 21-cv-81277, 2022 WL 493690, at *7 (S.D. Fla. Jan. 24, 2022). Vita's pleading error warrants dismissal of Counts II, III, and VII.

**C.      Vita still does not allege that it entered into an enforceable oral referral agreement with LGN, dooming its entire amended complaint.**

By Vita's own admission "there is no signed written document styled referral agreement between [LGN] and Vita Law Offices, P.C." Teti Decl. Ex. 4 at 1. Vita does not allege it obtained a client's written consent to any referral fee. Rather, it implicitly admits it did not. *See* Am. Compl. ¶¶ 25–26 (arguing consent was "neither necessary nor required"). Vita has failed to furnish (despite multiple requests) any parol evidence of such an agreement, the obvious conclusion being that none exists. *See* Compl. Ex. D at 3 ("conclud[ing] from Vita's silence . . . that there is no such documentation"). And despite amending, Vita offers no new supporting allegations. It leaves LGN and the Court with only Vita's say-so that it thinks it formed an oral referral agreement, evidently through Mr. Isquith, with LGN. But Vita fails to plausibly say so.

**1.      The Court should dismiss Counts I through V and VII through IX must because Vita still does not plausibly allege that Mr. Isquith was LGN's "agent."**

Seven of Vita's nine amended causes of action hinge on its insistence that Mr. Isquith was LGN's agent. *See* Defs.' Initial Dismissal Br. 10. Counts I and IX do so expressly. *See* Am. Compl. ¶¶ 39, 84. While other Counts no longer incorporate Count I's explicit allegation of agency, they still rely, factually, on an implicit assertion of agency. Count II (unjust enrichment) alleges LGN

9

"knowingly accepted" "benefits" from Vita—but this cannot be true, based on Vita's factual allegations. Count IV (fraudulent misrepresentation) alleges Vita "relied on Defendants' initial acceptance" of the agreement. *Id.* ¶¶ 46, 59. Counts V (violation of Massachusetts' consumer protection law) and VII (quantum meruit) allege LGN "solicited referral of Massachusetts clients" from Vita.[7] *Id.* ¶¶ 65, 74 (alleging a "specific request and solicitation" for clients from LGN). Count VIII (contract implied in fact) describes "communications" between Vita and LGN that allegedly "manifested an intent to be bound" to the purported referral agreement. *Id.* ¶ 78.

Yet, by Vita's own admission, LGN and Vita never had any communications or dealings prior to the end of the *Salmon* litigation. *See* Am. Compl. ¶¶ 17–26 & Ex. D at 2. These allegations are plausible only if Mr. Isquith acted as LGN's agent in "accepting" the "benefits" or the agreement, "soliciting" clients, or "communicat[ing]" with Vita. The Court need not credit the threadbare "label[]" Vita attaches to Mr. Isquith, nor its "conclusory" statements (let alone its implications) that Mr. Isquith could act on LGN's behalf. Vita must plausibly allege the existence of this supposed principal-agent relationship. It has not.

Massachusetts applies a functional choice-of-law approach, asking which state "has the more significant relationship to the parties and the underlying" dispute. *Stathis v. Nat'l Car Rental Sys., Inc.*, 109 F. Supp. 2d 55, 56 (D. Mass. 2000); *accord Van Dusen v. Barrack*, 376 U.S. 612 (1964) (transferee court must apply transferor's choice-of-law rules). "[D]ifferent law could apply to different aspects of a case." *Stathis*, 109 F. Supp. 2d at 56. With respect to whether Mr. Isquith is LGN's agent, Minnesota law governs.[8] That is where LGN is incorporated and had its sole office in 2019 and so, if Vita is to be believed, from where LGN ordained Mr. Isquith as its agent.

Agency relationships arise from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5–6 (Minn. 1992); *accord Theos*

---

[7] Again, Vita tries sophistry to plead around its factual deficiencies. In LGN's motion to dismiss the original complaint, it pointed out that Vita pleaded deprivation of its "rightful" fee, but that the fee could be "rightful" only if Mr. Isquith had authority to accept the purported referral agreement on LGN's behalf. *See* Defs.' Initial Dismissal Br. 8. Vita simply excises that language in its amended complaint. *Compare* Orig. Compl. ¶ 44 *with* Am. Compl. ¶¶ 63–64.

[8] Regardless, there is no conflict between Minnesota and Massachusetts law on this issue. *Cf. Jenny B. Realty, LLC v. Danielson, LLC*, 456 F. Supp. 3d 307, 314 (D. Mass. 2020) ("Where there the outcome would be the same regardless of which state's law applies, there is no conflict and the court need not resolve the choice of law question."). Accordingly, LGN cites both jurisdictions.

& Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000). An agent's authority may be actual or apparent. *New Millenium Consulting, Inc. v. UnitedHealthCare Servs., Inc.*, 695 F.3d 854, 857 (8th Cir. 2012); *Theos & Sons*, 729 N.E.2d at 1120. Vita fails to meet its burden to allege either. *Cf. White v. Boucher,* 322 N.W.2d 560, 566 (Minn. 1982) (party alleging agency has burden); *Sabel v. Mead Johnson & Co.,* 737 F. Supp. 135, 138 (D. Mass. 1990) (same).

First, Vita fails to plead actual authority. Actual authority is granted by the principal. *Hockemeyer v. Pooler*, 130 N.W.2d 367, 377 (Minn. 1964); *Theos & Sons*, 729 N.E.2d at 1120. In Count I, Vita makes a conclusory claim that Mr. Isquith had "actual . . . authority" to act as LGN's agent. Am. Compl. ¶ 39. But it alleges no facts showing any such agreement between Mr. Isquith and LGN. This "label[]" is "not adequate to survive" dismissal. *Chaparro*, 693 F.3d at 1337.

Second, Vita fails plead Mr. Isquith's "apparent authority" to bind LGN to contracts. Am. Compl. ¶¶ 39, 84. Apparent authority "must be found in the conduct of the principal, not the agent." *Truck Crane Serv. Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn. 1983); *accord Hudson v. Mass. Prop. Ins. Underwriting Ass'n*, 436 N.E.2d 155, 159 (Mass. 1982). "Agency cannot be proved solely by the acts or declarations of the assumed agent," much less the subjective belief of a third-party. *Jurek v. Thompson*, 241 N.W.2d 788, 791 (Minn. 1976); *accord Normandin v. Eastland Partners, Inc.*, 862 N.E.2d 402, 411 (Mass. App. Ct. 2007). That is why courts routinely reject apparent agency assertions where an allegedly aggrieved third party never spoke with the principal. *See, e.g.*, *Constr. Mortg. Invs. Co. v. Westland Title Servs., Inc.*, No. 91-cv-299, 1991 WL 137699, at *2 (Minn. Ct. App. July 30, 1991) (since plaintiff "never communicated with" alleged principal "at any time," alleged principal "could not have given" plaintiff "a basis to conclude that" alleged agents "had authority to act on his behalf."); *McLaughlin Transp. Sys., Inc. v. Rubinstein*, 390 F. Supp. 2d 50, 63 (D. Mass. 2005) (no apparent authority where third party "was never in communication with" alleged principal).

While an alleged principal's conduct may support claims of apparent authority, a third party's interpretation of that conduct must be "reasonable." *See Hagedorn v. Aid Ass'n for Lutherans*, 211 N.W.2d 154, 158 (Minn. 1973); *Theos & Sons*, 729 N.E.2d at 1120. Courts strictly scrutinize the reasonableness of inferences offered to establish apparent agency. *William H. McCoy Petroleum Fuels, Inc. v. Pool*, for example, held it was "not reasonable" for a third party to assume an alleged agent's apparent authority, even where the alleged agent previous accepted correspondence on the alleged principal's behalf. No. C3-88-1435, 1989 WL 7592, at *2 (Minn.

11

Ct. App. Feb. 7, 1989) ("In any event, one who deals with an agent has a burden to inquire and discover the extent of the agent's authority."). *St. John's Holding, LLC v. Two Electronics, LLC*, found it not reasonable for the plaintiff to rely on the defendant's instruction to "work through Barry" to negotiate a deal as proof of Barry's apparent authority to bind the defendant that deal. No. 16-misc-90, 2016 WL 6191911, at \*12–13 (Mass. Land Ct. Oct. 24, 2016). And *Merchia v. Femmino* found it "unreasonable" for a third party to rely on a supposed agent's "use of plural pronouns such as 'we' or 'our'" as proof of apparent authority. No. 17-misc-576, 2019 WL 1461488, at \*7 (Mass. Land Ct. Mar. 29, 2019).

In Count IX, Vita accumulates alleged conduct that, it believes, suggests Mr. Isquith had apparent authority to act on LGN's behalf, "including accepting the benefit of the referred clients, entering into the case, pursuing leadership, and obtaining appointment as interim co lead [sic] counsel[.]" Am. Compl. ¶ 84. It may be reasonable to infer from these facts that LGN agreed to represent Wood Mountain and Golden Goose. But it is *not* reasonable to assume, from these quotidian litigation events, that LGN agreed to pay a 15% referral fee to an attorney with whom it had not "ever met, or ever spoken." Teti Decl. Ex. 3.

### 2. The Court should dismiss Counts I and IV through VII because an oral agreement between Vita and LGN, if it existed, would be unenforceable.

Four of Vita's amended causes of action depend on the existence of a valid referral agreement. *See* Am. Compl. ¶¶ 39 (Count I, alleging Vita "and LGN entered into a valid and enforceable contract"), 55–56 (Count IV, alleging existence of the "existence" of "the referral agreement"), 63 (Count V, alleging existence of "the referral agreement"), 69 (Count VI, same), 78 (Count VII, alleging "an agreement to pay [Vita] 15% of the net attorneys' fees"). Vita has not plausibly alleged that it has even an unwritten referral agreement with LGN. But regardless, any such agreement would be unenforceable because it is not in writing.

For choice-of-law issues involving a services contract,[9] Massachusetts follows the Restatement (Second) of Conflict of Laws ("the Restatement") and looks to the state "where the contract requires that the services, or a major portion of the services, to be rendered, absent a showing that "some other state has a more significant relationship" to the contract issues. *Telford v. Iron World Mfg., LLC*, 680 F. Supp. 2d 337, 339 (D. Mass. 2010) (citing Restatement § 196). Here, that is Florida. Vita "provided" "services"—allegedly referring a plaintiff, Am. Compl.

---

[9] This applies to all of Vita's causes of action, save Counts IV and V.

¶ 23—in conjunction with a Florida litigation.[10] At the time Vita alleges it reached an agreement with LGN, a direct-purchaser *Salmon* case was already pending in this District. *See* Compl., *Euclid Fish Co. v. Mowi ASA*, No. 1-cv-21551 (S.D. Fla., filed Apr. 23, 2019), ECF No. 1. Vita admits to seeing a draft of the proposed indirect purchaser complaint bearing a Southern District of Florida caption. *See* Am. Compl. ¶ 19. When Vita supplied a second plaintiff to replace its first inadequate one, the case was pending in Florida. *Id.* ¶ 23. Vita thus performed "the bulk of [its] services" in Florida. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115, 119 (D. Mass. 2002).

To the extent there is any doubt that Florida is the place of performance, Massachusetts' general choice-of-law rules for contract actions follows Restatement § 188. Section 188(2) "identifies five factors to consider when conducting a choice-of-law evaluation in a contractual context: (1) the place of negotiating; (2) the place of contracting; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, or place of business of the parties." *Daynard*, 188 F. Supp. at 120 (citing Restatement § 188). The place of contracting is Minnesota, where Vita alleges LGN accepted its offer.[11] *See* Am. Compl. ¶ 19; *Autographic Reg. Co. v. Phillip Hano Co.,* 198 F.2d 208, 212 (1st Cir. 1952) (An agreement "c[o]me[s] into being if any such contract ever came into being at all" "where [the offeree] . . . accepted the [offeror's] offer."); *see also Kelley v. Schlumberger Tech. Corp.,* No. 85-cv-4794, 1987 WL 9908, at *2 (D. Mass. Apr. 13, 1987) ("[A]n oral contract made by telephone is deemed to be made at the place where the accepting party is located."); *contra* Am. Compl. ¶¶ 11, 19 (alleging contract formed where word of acceptance was received). The place of performance is, as noted above, Florida. *See Daynard*, 188 F. Supp. 2d at 119. So is the subject matter.[12]

---

[10] Vita's presence in Massachusetts is not determinative. *Daynard*, 188 F. Supp. 2d at 119 ("For example, if a New York lawyer represented a client in a trial in New Jersey, the bulk of the lawyer's services would likely be rendered in New Jersey—even if the lawyer's office is in New York.").

[11] Vita's amended complaint misstates Massachusetts law. *See* Am. Compl. ¶¶ 11 ("[T]he contract at issue was formed in Massachusetts upon receipt of Defendants' acceptance."), 19 ("Vita received and relied upon this acceptance within the Commonwealth of Massachusetts, thereby forming a binding contract in Massachusetts."). The Court need not accept these false statements of law set forth in Vita's pleading. *Cf. Iqbal*, 556 U.S. at 678 (explaining requirement to accept allegations as true is "inapplicable to legal conclusions").

[12] The place of negotiations adds nothing to the analysis because Vita does not allege any negotiations. Likewise, the parties' varying domiciles point to no particular state's law.

These factors thus point to either Florida or Minnesota law. Under either, a referral fee agreement must be in writing. *See* Fla. Bar R. 4-1.5(e); Minn. R. Prof. Conduct 1.5(e). It must be approved by the client in writing. *See* Fla. Bar R. 4-1.5(e); Minn. R. Prof. Conduct 1.5(e). It must be "reasonable" and (unless the lawyers assume joint legal responsibility) "in proportion to the services performed by each lawyer[.]" Fla. Bar R. 4-1.5(g); Minn. R. Prof. Conduct 1.5(e). An oral referral agreement is unenforceable as against public policy. *See Chandris, S.A. v. Yanakakis,* 668 So. 2d 180, 185–86 (Fla. 1995); *Christensen v. Eggen,* 577 N.W.2d 221, 225 (Minn. 1998) ("The fee-splitting agreement . . . violates public policy because it does not comply with [Rule] 1.5(e) and is therefore unenforceable.").

Under either Florida or Minnesota law, Vita's supposed agreement is unenforceable. *Cf. Jenny B.*, 456 F. Supp. 3d at 314. Vita concedes the referral agreement is not in writing. *See* Am. Compl. ¶¶ 19, 39, 50, 78, 85; Teti Decl. Ex. 4 at 1 ("You . . . seem to be reliant and stuck on the fact that *there is no signed written document styled referral fee agreement between [LGN] and Vita Law Offices, P.C.*" (emphasis added)). It did not obtain its clients' express and informed written consent to the purported agreement. During pre-suit negotiations, LGN repeatedly requested Vita's agreement with its client. *See, e.g.*, Am. Compl. Ex. D at 3 (requesting copy of, *inter alia*, "Vita's written contingent fee agreement" with clients).[13] The Court might reasonably expect Vita to have provided such proof of the merits of its claim during the parties' pre-suit negotiations. It has not, despite supplying the Court with ample exhibits, making it reasonable to "conclude from Vita's silence . . . that there is no such documentation." Am. Compl. Ex. D at 3.

Vita is stuck between a rock and a hard place. To extract an exorbitant fee from LGN, it must show an oral agreement exists. But to do so, Vita must plead—and would have to eventually prove, were its pleading not fatally deficient—that it violated the ethics rules. *See* Mass. R. Prof. Resp. 1.5(e). Vita argues that, since the fees were "derived from a 'common fund,'" "not deducted from [Vita's clients'] individual recoveries," and subject to supervision by the Court, "a written

---

[13] The purported agreement violates the ethics rules for another reason: Vita's request for 15% of LGN's fees is unreasonable and not proportional to the work it performed. *See* Fla. Bar R. 4-1.5(g); Minn. R. Prof. Conduct 1.5(e). Vita demands hundreds of thousands of dollars an hour for less than a days' work. *See supra* note 3 and accompanying text. Vita thus asks this Court to award a fee that "is not in proportion to the work he performed on the case . . . without reference to the amount of work actually performed[.]" *Joseph v. Dubbin*, No. 06-cv-20464, 2006 WL 8433470, at *2 (S.D. Fla. Dec. 28, 2006). But the Court "can do no such thing." *Id.*

fee agreement signed by the clients was neither necessary nor required," and Vita need not comply with "applicable rules regarding attorney fee divisions." Am. Compl. ¶¶ 25–26.

This is triply false. First, a *pro rata* share of the fees *is* deducted from class representatives' recovery. Second, there is no class-action exemption to the client-consent requirement. Rule 1.5(e) "*speaks directly to this issue*" by "impos[ing] an *unequivocal* duty upon lawyers to obtain a client's consent before dividing fees with lawyers outside the firm." *Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, No. 11-cv-10230, 2018 WL 11026335, at \*112 (D. Mass. June 28, 2018) (emphasis added) (addressing fee agreement not disclosed to class representative), *R&R adopted in relevant part*, 512 F. Supp. 3d 196 (D. Mass. 2020). Third, informed consent is *more* important in class actions, not less: "a class representative . . . *must* be given the information reasonably necessary to perform its fiduciary duties to the class." *Id.* "Thus," Vita "ha[d] a duty to inform" Wood Mountain and Golden Goose "as its client[s], *but more so as [] representative[s] of the class*[.]" *Id.* (emphasis added). Its failure to do so renders any supposed referral agreement unenforceable.

Vita "does not allege any of the facts necessary to recover a referral fee" such as that "a written agreement existed" or that "the fee is in proportion to the work performed[.]" Those "deficiencies are fatal to [Vita's] case." *Joseph v. Dubbin,* No. 06-cv- 20464, 2006 WL 8433517, at \*2 (S.D. Fla. July 14, 2006) (granting motion to dismiss).

### D. Vita's amended complaint fails for a myriad of additional reasons.

The above flaws in suffice to dismiss Vita's entire amended complaint as a matter of law. Still, in addition to the shotgun pleading rule violations, *see supra* Section IV.A, self-defeating causes of action, *see supra* Section IV.B, and failure to plead the formation of an enforceable referral agreement, *see supra* Section IV.C, additional flaws in Vita's amended complaint that doom its claims.

#### 1. The Court should dismiss Counts II and III because Vita cannot recover in equity where it violated the Rules of Professional Responsibility.

Vita's unjust enrichment and promissory estoppel claims (Counts II–III) fail as the alleged fee agreement Vita seeks to enforce, if it existed, would violate the rules of professional conduct.[14] *See Marcus v. Garland, Samuel & Loeb, P.C.*, 441 F. Supp. 2d 1227, 1231 (S.D. Fla. 2006)

---

[14] This is true regardless of whether the Court applies the ethics rules where Vita is, *see* Mass. R. Prof. Conduct 1.5(e), where the offer was accepted, *see* Minn. R. Prof. Conduct 1.5(e), where *Salmon* was pending, *see* Fla. R. Prof. Cond. 4-15(f)(2), or even where LGN's purported "agent" was, *see* N.Y. R. Prof. Conduct 1.5(g)(2).

(dismissing promissory estoppel claim where fee-split "was never reduced to writing, discussed with the client . . . or the client's written consent to the secret agreement obtained"); *Architectural Ingenieria Siglo XXI, LLC v. Dominion Republic*, No. 13-cv-20544, 2020 WL 6808856, at \*1, \*4–5 (S.D. Fla. Apr. 16, 2020) (dismissing unjust enrichment claim where attorney did not sign fee-splitting agreement); *Soderberg & Vail, LLC v. Meshbesher & Spence, Ltd.*, Nos. 15-cv-88 & 15-cv-358, 2016 WL 22251, at \*3–4 (Minn. Ct. App. Jan. 4, 2016) (affirming dismissal of promissory estoppel and unjust enrichment claims where purported agreement violated ethics rules).

Vita's promissory estoppel claim fails for an additional reason. A plaintiff asserting promissory estoppel must plead and prove, among other things, that (1) the defendant made a promise, and (2) the plaintiff relied on it. *See Robinson v. SunTrust Mortg., Inc.*, 785 F. App'x 671, 678 (11th Cir. 2019); *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). Vita never communicated with LGN, and Vita has not plausibly alleged Mr. Isquith was LGN's agent. *See supra* Section IV.C.1. So LGN could not have made any promises to Vita (directly or indirectly). And since LGN made no promises, there was nothing on which Vita could rely.

**2. The Court should dismiss Count IV because Vita's contradictory allegations undermine its fraudulent misrepresentation claim.**

To state a claim for fraudulent misrepresentation under Massachusetts law,[15] a plaintiff must plausibly plead, among other things, that (i) the defendant "made a false representation of a material fact," and (ii) the plaintiff "relied upon the representation as true and acted upon it to his damage." *Barrett Assocs. v. Aronson*, 190 N.E.2d 867, 868 (Mass. 1963). While Vita offers some more detail than it did before, *see* Orig. Compl. ¶¶ 41–44, its fraudulent misrepresentation claim (Count IV) is still not plausible. Vita alleges Ms. Silton made "false statements of material fact concerning the enforceability of the referral agreement" in 2023, after the *Salmon* Litigation concluded. Am. Compl. ¶¶ 55–56. Vita does not allege it relied on those statements—quite the contrary.[16] The only representation Vita alleges it relied upon was LGN's purported "initial

---

[15] Massachusetts law applies. *See Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223 (D. Mass. 2017).

[16] Vita alleges it "immediately objected" and—later—issued a "demand" letter. Am. Compl. ¶¶ 28, 35. In that letter, Vita "reserve[d] all rights to pursue the remaining amounts owed and intends to proceed with [its] claims for the full referral fees due." Am. Compl. Ex. B at 1 (Letter, C. Cervantes to H. Silton (Jul. 30, 2024)), ECF No. 62-2. So, Vita cannot have relied on LGN's statements that Vita's referral-fee claims are meritless.

acceptance" of the referral agreement in 2019—a alleged representation it treats as true.[17] *Id.* ¶ 59. So the misrepresentation allegedly is not the representation allegedly relied upon. That Vita did not rely on the 2023 statements is evident from the fact that it is presently suing LGN precisely because it did not. *See Rodi v. S. New Engl. Sch. Law*, 532 F.3d 11, 16 (1st Cir. 2008) (affirming rejection of fraudulent misrepresentation claim where plaintiff's claim of reliance "is directly contradicted by his own actions"). And Vita does not claim the 2019 statements it *does* allege it relies on are false. *In re Access Cardiosystems, Inc.*, 404 B.R. 593, 641 (Bankr. D. Mass. 2009) ("It is axiomatic that a defendant will not be liable for an affirmative false statement if the statement is, in actuality, *not false.*"). Vita's claim is thus logically inconsistent and facially implausible.

### 3.     The Court should dismiss Count V because Vita still fails to plead a cognizable violation of Massachusetts' consumer protection law.

Chapter 93A, Massachusetts' consumer protection law, prohibits unfair or deceptive practices in the conduct of trade or commerce. Mass. Gen. L. ch. 93A § 2(a). But "not every unlawful act is automatically an unfair (or deceptive) one under" the statute. *Mechs. Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231, 1237 (Mass. 1979). Vita's amended complaint still fails to state a statutory consumer protection claim for the same reasons its original complaint fell short. *See* Defs.' Initial Dismissal Br. 14–16.

First, Chapter 93A limits the "trade" or "commerce" within its scope to services "offered generally by a person for sale to the public in a business transaction[.]" *Manning v. Zuckerman*, 444 N.E.2d. 1262, 1265 (Mass. 1983). It does not apply to "a strictly private transaction, 'where the undertaking is not in the ordinary course of a trade or business.'" *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 23 (2003). Chapter 93A "'is not available to parties in a strictly private transaction,' such as someone seeking to sue his or her business partner." *Debnam v. FedEx Home Delivery*, 766 F.3d 93, 96 (1st Cir. 2014) (quoting *Linkage Corp. v. Trs. of Bos. Univ.*, 679 N.E.2d 191, 207 n.33 (Mass. 1997)). And it does not apply to "disputes between parties to a joint venture[.]" *Linkage Corp.*, 679 N.E.2d at 207 n.33.

Referral agreements are not within the scope of services LGN offers "for sale to the public in a business transaction[.]" *Manning*, 444 N.E.2d. at 1265. LGN provides legal services to clients.

---

[17] To be clear: Vita could not have relied on any "initial acceptance" of a purported agreement because it never spoke with LGN until after the *Salmon* Litigation, *see* Am. Compl. ¶¶ 17–26; Teti Decl. Ex. 3, and Mr. Isquith was not LGN's agent, *see supra* Section IV.C.1.

17

While the practice of law may constitute trade or commerce, LGN did not provide legal services to Vita; Vita was not LGN's client. *See, e.g.*, *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1195 (Mass. 1997). Vita and LGN were "co-counsel." Am. Compl. ¶¶ 4, 80. This is precisely the sort of joint venture to which Chapter 93A does not apply. *Cf. Law Offices of David Efron v. Matthews & Fullmer Law Firm*, 782 F.3d 46, 50 (1st Cir. 2015) (referring to co-counseling agreement as a "joint venture agreement").

Second, breach-of-contract allegations "are not sufficient to support a claim under" Chapter 93A, *Whitinsville Plaza, Inc. v. Kotseas*, 390 N.E.2d 243, 251 (Mass. 1979), unless "the nature, purpose, and effect of the challenged conduct is coercive or extortionate," *Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 803 N.E.2d 744, 748–49 (Mass. App. Ct. 2004) (citing *Mass. Emps. Ins. Exch. V. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995)). Vita tries to shoehorn its allegations into this exception by adding legal conclusions that LGN engaged in "coercion" when Ms. Silton supposedly tried to "extort a waiver of rights" in an April 5, 2023 email, and the firm allegedly "with[e]ld[]" Vita's lodestar fee "as leverage." Am. Compl. ¶¶ 63–64. These allegations are contradicted by documents Vita incorporates into its amended complaint, and the Court should not credit them.[18] *See Griffin Indus.*, 496 F.3d at 1206 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). All Vita is left with, after stripping away these false statements, is a barely disguised allegation that the parties had an agreement and LGN did not honor it. *See* Am. Compl. ¶¶ 63–64. This fails to state a claim under Chapter 93A. *See Whitinsville*, 390 N.E.2d at 251.

Third, Chapter 93A "expressly provides that no action may be brought under the statute unless the complained-of conduct occurred 'primarily and substantially' within the Commonwealth." *Monahan Prods. LLC v. Sam's East, Inc.*, 463 F. Supp. 3d 128, 151 (D. Mass.

---

[18] Vita undermines its claim that LGN withheld the lodestar payment. Vita insisted the money be escrowed. Am. Compl. ¶ 28. Vita did not claim it provided wiring instructions and LGN still withheld payment. Rather, Vita's exhibits show LGN eventually had to mail Vita a paper check because Vita never provided wire information. *See id.*, Ex. A, ECF No. 62-1. And while Vita alleges the email "specifically . . . stat[ed] . . . that [Vita's] acceptance of the undisputed lodestar would be deemed 'final' satisfaction of all claims," Am. Compl. ¶ 63, it says no such thing. It does not even contain the word "final." It merely sets forth Vita's lodestar, requests wiring instructions, and states "[r]eceipt of your wiring instructions will be considered acceptance of your allocated fees and expenses." Teti Decl. Ex. 1 (Email from H. Silton to R. Vita (Apr. 5, 2023)), Ex. 51-2; *see* Am. Compl. ¶ 27 (incorporating by reference).

2020) (quoting Mass. Gen. L. ch. 93A § 11). Vita complains of conduct that allegedly occurred in Minnesota and Florida. Ms. Silton sent her April 5 and 6, 2023 correspondence from Minnesota. *See* Am. Compl. ¶ 63. LGN allegedly entered into the purported referral agreement in Minnesota. *See id.* ¶ 64; *accord Autographic*, 198 F.2d at 212. It distributed lodestar fees from Minnesota. *See* Am. Compl. ¶ 64. And it communicated with the Court from Minnesota and in Florida. *Id.* Vita attempts to recenter its claims around Massachusetts, *see id.* ¶ 65 (claiming Ms. Silton "directed" her emails "into Massachusetts") and invokes contacts with the Commonwealth that are not part of the complained-of-conduct, *see id.* (referring to Vita's Massachusetts-based clients). The only arguably relevant Massachusetts-based conduct it alleges is the fact Vita alleges an injury in Massachusetts. *Id.* But "a place of injury within Massachusetts is not a sufficient basis for finding that conduct occurred 'primarily and substantially' within the Commonwealth." *In re Intuniv Antitrust Litig.*, 496 F. Supp. 3d 639, 682 (D. Mass. 2020) (quoting Mass. Gen. L, ch. 93A § 11).

### 4. The Court should dismiss Count VI because it asserts a claim not cognizable under relevant law.

Neither Florida nor Minnesota recognizes an independent cause of action for an alleged breach of the implied covenant of good faith and fair dealing separate from a breach of contract claim. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.,* No. 12-cv-14208, 2013 WL 12199875, at *8 (S.D. Fla. Apr. 23, 2013); *Michalski v. Bank of Am. Ariz.,* 66 F.3d 993, 997 (8th Cir. 1995). Because either Minnesota or Florida law applies to Vita's contract-based claims, *see supra* Section IV.C.2, the Court should dismiss Vita's sixth cause of action.

### 5. The Court should dismiss Count VII because Vita has failed to plausibly allege an agreement or the value of its purported services.

In Florida, a quantum meruit claim requires a showing of an implied contract: an "agreement," that "falls short of being an enforceable, true contract." *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 887, 881 n.1 (Fla. Dist. Ct. App 2010). Vita fails to plausibly allege an agreement with LGN, so its quantum meruit claim fails.

In Minnesota, a quantum meruit claim does not entitle an attorney to collect whatever that attorney claims a referral agreement provides. *See Soderberg & Vail*, 2016 WL 22251, at *7 (affirming award of 1% of attorneys' fees based on value, rather than 33% in unenforceable referral agreement). Rather the plaintiff must plausibly allege of the "value" of the services rendered. *Ertsgaard v. Bowen*, 237 N.W. 1, 1 (Minn. 1931). Minnesota law supplies eight factors to aid in valuing attorneys' quantum meruit claims. One is any "fee arrangement existing between counsel

19

and the client[.]" *Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Tr.*, 912 N.W.2d 652, 658 (Minn. 2018). Vita has neither alleged nor supplied any agreement with its clients. Two other factors require comparing the "time and labor required" of the plaintiff with the "contribution of others." *Faricy*, 912 N.W.2d at 658. Vita contributed just 22.4 hours of labor to *Salmon*, or 0.3% of that contributed by LGN. Vita alleges nothing suggesting that 15% of fees is reasonable for supplying two plaintiffs (one of which jeopardized the case, *see* Am. Compl. ¶ 22 (alleging Wood Mountain "potentially undermin[ed] the case's settlement prospects")) to represent 3% of the class, when Vita worked less than 24 hours on the matter. Accordingly, Vita has failed to offer any non-conclusory allegations to support its quantum meruit claims.

## V.    CONCLUSION

If what Vita alleges were true, it should have secured an ethically compliant, enforceable, written referral agreement. It did not. It had the opportunity to resolve its grievances in mediation. It did not. It had the opportunity, over four months and four dockets before three courts, to plausibly allege wrongdoing. It did not. This Court gave Vita yet another opportunity to correct its prior failings. And it has not. The Court should dismiss Vita's amended complaint with prejudice.

Dated: January 14, 2026

Respectfully Submitted,
 */s/ Jordan M. Lewis*
Jordan Lewis (Fla. Bar. #97997)
**JORDAN LEWIS, P.A.**
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Phone: (954) 616-8995
Fax.: 954.206.0374
jordan@jml-lawfirm.com

Stephen J. Teti (admitted *pro hac vice*)
Kristie A. LaSalle (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Phone: (617) 535-3763
sjteti@locklaw.com
kalasalle@locklaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 14, 2025, this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

<u>   /s/ Jordan M. Lewis    </u>